## MARR'S EXECUTRIX *versus* SOUTHWICK, CANNON & WARREN.

Though the account of a plaintiff exhibit no charge *against* a defendant within six years, yet an item in the defendant's account, within that period, takes the case without the statute of limitations, of six years.

Where a case in Chancery can be completely decided, between parties ; the circumstance that an interest exists in another person, whom the process of the Court cannot reach, will not, prevent a decree upon the merits.

A suit against the representative of an estate, for the purpose of subjecting the assets of a deceased partner, to the payment of a judgment obtained against the firm; is a new and distinct proceeding, against a new party ; and all the facts must be established by testimony, in the ordinary manner.

Thus, the judgment obtained against a firm, in such case, is not proper evidence, nor can the depositions taken in the Common Law suit, be read as testimony against an executor, in a Chancery cause, to compel payment out of the estate of the firm debt.

Where a judgment, having been obtained at law in this State, aga'nst a firm; the creditor, residing abroad filed a bill in Chancery against the representative of the estate of one of the partners, to subject the assets of the estate to the payment of the judgment—held, that an admission, that one of the firm resided in New Orleans, and was solvent, was fatal to the Chancery case; for this was an admission of a complete and adequate remedy at law, which should have been pursued, before resorting to equity for relief, against the estate of the deceased partner.

Interest may be charged on an open account, when the contract stipulates for a certain period of credit ; but the law does not permit rests to be made in such account every six or twelve months, re-stating the account at each time, and converting interest into principal ; and no custom or agreement to that effect can alter the law.

Southwick, Cannon & Warren, merchants, of New York, brought their action against Tarrant & Marr, as partners, in the Circuit Court of Tuskaloosa county. The writ was served on Marr only. During the pendency of the trial, Marr died ; and judgment was rendered against Tarrant, the surviving partner. The said Southwick, Cannon & Warren, afterwards filed their bill in Chancery in the Circuit Court of Tuskaloosa county, setting forth that Tarrant had removed beyond the jruisdiction of the Court, and out

of this State; that he had no property here, nor had when judgment was rendered, and that he was insolvent: that Marr defended the suit at law during his life time, and employed an attorney who defended it until judgment was given : that he (Marr) left at his death a large estate and property, sufficient to pay the debt, and that he constituted Nancy Marr his executrix, who had taken upon herself, that trust; and the bill sought a decree against said executrix for the amount of the judgment, interest and costs, to be made out of the estate in her hands.

The answer of the defendant denied any knowledge of the original claim against the testator; did not admit its justice ; denied the liability of the estate under the judgment, and required full proof on the part of the complainants. The defendant contended that usurious interest was charged in the claim for which judgment was rendered ; and of this she claimed the advantage allowed by law. The answer also denied the insolvency of Tarrant; relied on the statute of limitations, and set up other defences, which, in view of the points embraced in the decision, it is not deemed necessary to notice in this place.

A bill of exceptions taken in the cause shewed, among other things, that the defendant objected to the reading of the judgment at law in evidence in the Chancery suit, also to the reading of the depositions taken in the suit at law ; which objections were overruled by the Court, and the judgment and depositions admitted in evidence. The defendant objected to a decree, because the fact, whether Marr was a partner of the firm of " J. Tarrant & Co." was a fact to be tried by a jury.

The defendant applied for a continuance of the cause, to enable her to prove the solvency of Tarrant

at the time of filing the bill; and that he resided in New Orleans, was engaged in extensive business, and enjoying good credit. These facts, the complainants, for the purpose of obtaining a trial at the time, admitted.

The Court below decreed the amount of the judgment at law, the interest thereon, and the costs of said judgment, to be paid by the defendant out of the estate of her testator.

CRABB, for Plaintiff in error.—The demurrer should have been sustained for want of proper parties defendant. The complainants lived in New-York, and Tarrant lived in Louisiana. Tarrant was as much within the reach of the complainant, as was Marr's representatives. Tarrant ought, at least, to have been made a party to the suit, because he was not only a party in interest, but was first liable.—*Gow*, 109, 110, 232—2 *Stewart*, 291—*Aikin's Dig.* 289.

The demurrer should have been sustained, because there was a want of equity in the bill. The remedy was at law. It was so, I contend, independent of the statute. But our statute renders the remedy at law more clear and unquestionable. It makes the debts of partners joint and several, allowing a remedy against either.—*Aikin's Dig.* 268. We have a statute which does away the *jus accrescendi* in cases of joint contracts. This removes the reason respecting the right of survivorship as to the remedy; and the law with us corresponds with the reason of the case.

Chancery cannot be resorted to where the remedy is adequate at law.—1 *Stewart*, 81, 532.

Had the complainants brought their suit against us at law, we would have had an opportunity of defending ourselves before a jury of the country, where all matters of fact involved might have been properly

investigated, and where, among other things, the question, whether Marr was the partner of Tarrant, might have been tried by a jury.

The demurrer should have been sustained, because the object of the bill was not a legitimate one. It was to revive a judgment against John Tarrant, so as to make it operative against the executrix. This was not allowable. There was no privity in the case. The executrix is neither the representative of John Tarrant, nor of Tarrant & Co. A partnership is in the nature of a private corporation : Tarrant only, has any privity with the firm. There can be no revival of a judgment without such privity, and when such privity exists, the remedy is a *sci. fa.*—*Coke on Lit. A.*—6 *Bacon's Abr.*—1 *Stewart*, 194. It should have been shewn that the property of the firm had passed away entirely, before the representative of the deceased partner could be proceeded against.

The Court erred, in permitting the judgment against Tarrant, to be introduced as evidence in the Chancery cause. The parties were not the same : They were not the same in interest, nor in equity and justice. Marr may have had a defence, personal to himsel. We contend he had. The admission of this evidence, was groping in the dark for the truth of the case. The point in controversy was not necessarily the same. The presumption is, that the defences set up in the answer, were never made in the Court of Common Law. The executrix contends that Marr was never a partner—that the claim is affected by usury. Were these defences made before? The judgment was no evidence of a debt against the exetrix.—*Peake*, 68, 69—*Starkie*, 190, 191, 217, 221—1 *Conn. Rep.* 507—3 *ib.* 516—1 *Munf.* 373, 374, 37, 398—3 *Johnson's Reports*, 8—14 *Johnson's Reports*,

79 to 81—4 *Mass. Rep.* 613—3 *Yates' Rep.* 128—3 *Greenleaf's Rep.* 165.

It was error in the Chancellor, to permit the depositions, taken in the Common Law suit, to be read in the suit in Chancery, against the executrix. The suit was abated as to Marr. There was no judgment against him; the judgment, therefore, against Tarrant, could not be read against Marr's representative; and the depositions must follow the same rule. It is the depositions which support the judgment.

The question as to Marr's partnership should have been tried by a jury. It was a question of fact, and one on which the whole case might turn.—2 *Maddock's Ch.* 260, 474, 475, 479. If it be said that the chancellor had a discretion in this matter, I contend that it is not such a discretion, but this Court may decide, that the Court below decided erroneousl y.

The Court did wrong in reviving the judgment at law, instead of trying the facts anew. The decision of the Court, in the Common Law trial, was improperly taken as conclusive.

There was also error in the decree against the executrix, because Tarrant was *living* and *solvent*. Tarrant might have been sued in the Federal Court. The cause of action was not local : he might have been sued in the Courts of Louisiana. The case here, is altogether different from those cases to which the English doctrine applies, of a party being beyond the four seas. For the doctrine, that the complainant was bound to pursue the surviving partner, he being solvent—see 4 *Day*, 481—1 *Gallison's Rep.* 371, 2 *Mass.* 572.

The decree is also erroneous, for usury. The authorities are against allowing legal simple interest on an account of this kind. But here, by six months

rests, the interest was converted into principal, and interest thus allowed upon interest. This is clearly usury.

PECK, *contra.*—The remedy against the estate of a deceased partner, where the debt can not be collected out of the surviving partner, is clearly in Chancery.—*Kirby's* Rep. 147—2 *Johns. C. R.* 508. It is because the surviving partner is supposed to have in possession the effects of the firm, that the remedy is first against the survivor. Then when all due diligence has been used against the survivor, without the creditor being able to recover, the remedy against the representative of the deceased partner becomes complete. And this remedy can only be pursued in equity.

It is urged in argument, that in our State, we have a remedy at law: that our law makes the debts of partners joint and several. If this were true, it would overthrow one of the strongest objections that the defendant below makes, namely, that we did not sufficiently pursue the debt against Tarrant. Such, however, is not the law; and if it were, it would work great injury. The doctrine is fully settled in this Court, that the only remedy in the first instance, is against the survivor.—*Gow on Part.* 460—1 *Gallison,* 630. 'But, before the remedy in Chancery could be taken away, such would have to be the express language of the statute. A new legal remedy would not take it away. The old remedy is not to be considered as removed, where both may stand together.

After it had been urged, that our remedy was at law, because our statute had made all such debts joint and several, it is strangely contended, that we were

bound to pursue Tarrant further than we did. If the debt and the remedy had been several, as contended for, we were not bound to pursue Tarrant at all. But without insisting on this, if the survivor be either insolvent, or beyond the jurisdiction of the Court, it is sufficient, to give us our remedy in equity. If both partners were living, the whole debt might be collected from Marr, a bill being filed stating that the other partner lived beyond the jurisdiction of the Court. Tarrants' being out of the state, is sufficient ground for us to proceed in equity against Marr's representative. The State of Louisiana is a foreign State, as to the jurisdiction of our Court. If we could not proceed against Marr's estate, on account of Tarrant being in Louisiana, then if he were to go to England or to France, the case would be the same. Would the Court send a creditor to England, to bring his suit in the Court of King's Bench, when a party, bound in equity for the payment of the debt, was here.—1 *Vesey, jr.* 416—2 *Atkins,* 510. We pursued our remedy against the surviving partner, as far as the Courts could reach. We obtained a judgment, had an execution issued, and it was returned *nulla bona.*

It is objected that Tarrant should be joined in the bill. The objection is untenable. To have joined him in the bill would have been a misjoinder of parties. In such case, the decree would have been against Tarrant in his own right, and against the executrix, in her character as such. The decree must have been against both for the whole amount; but, in different rights. This would have been a fatal objection to the decree.

As to the introduction of the Common Law judgment in evidence, it is admitted, that, in general, a

judgment against a different party cannot be received ; but this stands on different ground : the judgment was properly against the firm.—1 *Starkie's Ev.* 181—2 *Stewart*, 386—1 *Espinas.* 607. The suit was commenced against Tarrant and Marr, and the judgment rendered against Tarrant, as survivor of the firm. In such a case, I doubt whether the judgment should not be taken as conclusive evidence of the indebtedness, and of the amount of it. The same matter was in issue ; the debt was the same—the plaintiffs were the same, and the defendant was the executrix of one of the same defendants. Is not this a stronger case than that in *Starkie*, where the judgment against the sheriff was made conclusive evidence against the securities ? But, be this as it may ; the judgment was, at least, admissible evidence to shew that complainants had prosecuted their suit at law as far as due diligence required ; and also to authorise the admissions of the depositions, and to shew that Marr had an opportunity of cross-examining. The introduction of the judgment and of the proceedings in the Common Law suit, was certainly proper in the suit in Chancery. They had been exhibited in the bill, and admitted in the answer. The judgment was, I conceive, a judgment against the firm, and therefore binding ; but the chancellor does not seem to have given that extent to the effect of the judgment. As to the doctrine concerning parties and privies, I contend that Marr was, in effect, a party. He was a party to the suit, and although he died before judgment, the suit was defended by the survivor, and the judgment therefore, as I think, settled the amount of the indebtedness of the firm, of which the executrix' testator was a member.

The depositions taken in the Common Law suit,

were proper evidence. Depositions properly taken in one proceeding, may always be read in another between the same parties, or those claiming under them. There could be no necessity of taking these depositions over again. They had once been regularly taken (the witnesses residing in New-York) and the executrix' testator had a full opportunity of cross examining.—1 *Har. Ch. P.* 299 ; 2 *Maddock C. Pl.* 443 ; *Viner's Ab.* 2d v. *A*, 553 ; 2 *Vern. Rep.* 443 ; 1 *Vern.* Rep. 413 ; 3 *Johnson's Ch. Cases*, 374 ; *Starkie's Evidence*, 272, 273.

It is urged that the bill should have been adjudged bad on demurrer, because it prays for a *revival* of the judgment at law. If the prayer be inappropriate, that is no cause of demurrer. If the bill be judged bad, it must be on account of its allegations. But I do not perceive the inaptitude of the prayer. The revival for which it prays is not to be taken in the technical sense, which must be by *sci. fa.*

It cannot be error that the Court did not submit the question to a jury whether Marr was a copartner or not. Such submissions of matters of fact are within the discretion of Courts of Chancery, and the exercise of discretion is not a ground of error.

I contend that nothing like usury is established in this transaction. The goods were purchased on a stated credit of six months. At the end of that time the debt bore interest ; and in the payments made from year to year, the interest was first deducted ; but after the closing of the account, rests were no longer made, nor interest charged, except on the principal debt.

WILSON, in reply.——It is contended on our part, that the remedy was at law. According to the Eng-

lish common law, partnership contracts were joint, and one partner being alive, law would not permit a suit to be prosecuted against the estate of the other. Resort must be had to chancery for that peculiar reason. This was not general but special chancery jurisdiction, and when this reason comes to cease, as it does by our statute, which has made partnership contracts several as well as joint, then resort cannot be had to Chancery. When the suit was brought against Tarrant & Co. Tarrant, who was the active partner, lived in New Orleans. The suit might have been brought against Tarrant in the State of his residence; or it might have been brought here against Marr alone, in this last case, the death of Marr would only have produced a few months delay. The delay that is complained of was occasioned by the course which the complainants chose to pursue. If the complainants had sued Marr alone, they would have had a complete remedy at law. So, though more tedious, his remedy was complete at law, by taking a judgment against Tarrant ; but he was bound to pursue that judgment, and to collect it of Tarrant. Or if they were not bound to pursue Tarrant, why might they not have prosecuted a suit at Common Law against the executrix—partnership contracts being, in this State, several as well as joint. In any point of view, there seems to have been no pretence for going into Chancery.

Tarrant should have been made a party. All having an interest in the judgment or decree should be made parties. Tarrant was primarily liable. He has the funds of the firm in his hands. Why should the executrix, who is a stranger to the transaction, be pursued alone in a Chancery suit. She, at least, was entitled to the aid of Tarrant's knowledge of the

matters in contest. That the decree would have been against Tarrant and the executrix, in different rights, is no objection in Chancery : the. Chancellor can make the proper decree against each party.

The States of the Union are not foreign to each other, like France, England, and the East Indies. Though fond of the doctrine of state sovereignty, I have never carried it that far. The people of the States form one people for many purposes. . The Federal Courts were open to the complainants. The complainants' living not in this State, but in New York, were not privileged suitors. If I am right as to the severalty of the claim, then the complainants' remedy at law was complete against the executrix; if I am not right in this, then the complainants were bound to pursue the surviving partner, who was as accessible to them as the executrix, neither residing in the same state with the complainants.

The bill does seek to revise the judgment at law. The complainants do not go on the original consideration. This is not allowable. The Chancellor can, it is true, grant relief under the general prayer, but not contrary to the tenor and main scope of the bill. This was a bill for a revival, and therefore not to be supported in such a case.

The opposing counsel represents the judgment at law as not being offered or used as the foundation of the decree. How so : the judgment is made part of the decree, the costs are embraced in the decree. Look at the language of the bill and of the decree also! Would equity have allowed the compound interest, if the judgment had not been regarded as conclusive? The interest is added to the principal, even where there were no payments, at the end of each year, and interest charged on interest, for five

years! If that be not compound interest, I know not what it is.

The executrix was neither party nor privy to the Common Law suit. She was neither the representative of Tarrant, nor of the firm. The judgment then, and the depositions were improperly used as evidence, to prove the indebtedness of her testator. It does not appear that the depositions were read in the Common Law cause; and if they were, still, if Marr had lived, he might have excluded them.

The decree is certainly erroneous. Tarrant's acknowledged solvency would of itself be fatal to a recovery against the executrix of the deceased partner.

By Mr. Justice HITCHCOCK:

In this case the bill was filed in the Circuit Court of Tuskaloosa county, by the defendants as complainants. The bill states that the complainants are merchants and partners, doing business in New-York. In 1824, one John Tarrant and one William M. Marr, since deceased, purchased goods of complainants, and continued to do so until 1830, making occasional payments; that in June, 1830, a balance was struck, and the defendants were indebted to complainants for principal and interest, one thousand six hundred and three dollars and eighty six cents: that a statement of the final account was made and forwarded to the defendants, which they neglected to discharge: that a suit in assumpsit was instituted by complainants against defendants in the Circuit Court of Tuskaloosa county, on the thirty-first of January, 1831, returnable to the next March term. The writ was served on Marr only. At September term, 1831, the death of Marr was suggested, and the cause ordered to proceed against Tarrant, the surviving partner:

that at the April term, 1832, a verdict and judgment were rendered against Tarrant, for one thousand eight hundred and one dollars and eighty four cents, and one hundred and twenty one dollars and ninety five cents costs: that execution was issued on the judgment, and returned " no property:" (the record of which suit is exhibited:) that Tarrant did and does reside beyond the limits of the State, and has no property here, nor had when judgment was rendered, and was, and is reputed insolvent, and is insolvent: that Marr died in August, 1831, and until his death defended the suit, and employed an attorney, who defended the same until judgment: that Marr left a large estate, and personal property, sufficient to pay the judgment: that Marr made a will, nominating the defendant as his executrix, who accepted the trust: that the will directs all Marr's just debts to be paid, and contains an admission of Marr's partnership with Tarrant: that the judgment against Tarrant is an equitable demand against the estate of Marr: that the defendant refuses to pay it, and pretends that Marr and Tarrant were never partners, and never purchased goods of the complainants—the contrary whereof is true; and that equity has jurisdiction of the case.

The bill prays, that the defendant, executrix, be made a party, and that she may answer: that the defendant, as executrix, be decreed to pay the full amount of the judgment, and costs of suit, and interest thereon; and also prays for general relief.

The defendant, in her answer, states—that she knows nothing of complainants account, except that she heard her deceased husband say it was unjust, and that he would not pay it. The institution of the suit, and proceedings to judgment are admitted.

The defendant insists, that the judgment cannot form a ground of recovery against her, being *ex parte*, and not obligatory; and requires that her liability be established, by witnesses which she may cross-examine; and adduce rebutting testimony : that the mode of calculating interest, as appears from the exhibits, renders the judgment usurious and void; she claims advantage of this : that one thousand four hundred and seventy one dollars worth of goods were purchased by Tarrant, individually, for which she is not liable : that the credits on the account should be confined to a period subsequent to the first purchase by Tarrant : and that the judgment as against her, for these reasons, is void.

The answer admits the will, and refers to it for all defendant's information respecting the co-partnership : the defendant did not pay the judgment, because her husband said the claim was unjust : that the defendant is informed by Tarrant, that the firm of J. Tarrant & Co. was composed of one James Pitcher, Samuel Pitcher, the said Tarrant and her husband : that the articles of copartnership were made a considerable time after the account, and were *anti dated* by James Pitcher, with a fraudulent intent to charge her husband with the purchase of goods, which was made by James Pitcher : that the suit should have been commenced against Samuel Pitcher, who died since her husband. The answer admits, that John Tarrant resides in New Orleans, and so resided before the institution of the suit at law, within the knowledge of complainants, and states a belief of his solvency; and that Tarrant says, he is able to pay all just demands. The answer also submits that Marr may have defended the suit until his death, and his counsel continued in the defence until judgment, yet this does not authorise a recovery on that judgment, as it

was *ex parte :* that she does not know when Samuel Pitcher died : that Marr had considerable property— enough to pay his just debts : that the estate is yet unsettled : that the defendant does not wish to incur individual responsibility : pleads the statute of limitations : (that 1826 is the last item in the account— 1828 the last credit thereon:) defendant is ignorant of partnership transactions, Tarrant being the acting partner. The defendant demurs to the bill, insists that judgment against one partner cannot be revived against the representatives of a deceased partner, without proving the original consideration : that the remedy is at law, and complainants entitled to none of the relief sought for.

The Chancellor decreed the amount of the judgment at law, ($1811 84,) interest thereon, ($284 93) and the balance of the costs of the judgment at law, ($56 55 1-2) to be paid by the defendant out of the estate of her testator.

A bill of exceptions, of the substance following, was taken to the opinion of the Chancellor.

1st. The defendant objected to the introduction of the judgment at law, stated in the bill, on the grounds,—that her testator was no party to that judgment; had no opportunity of making a defence against it; could not have the benefit of witnesses; could not sue out a writ of error; could not appeal therefrom, though erroneous; could not challenge the jury : if judgment had been different, could not have taken advantage of it in another suit, on the same cause of action; and because the surviving partner, Tarrant, could not compromit the rights of her deceased husband, by suffering judgment to be rendered against him. These objections were overruled,

and the judgment received as evidence before the Chancellor.

2d. The defendant objected to admitting the evidence, as exhibited in the bill, on the ground, that it did not appear that the said evidence was taken regularly and before competent authority.

3d. The defendant objected to the introduction of the depositions in the suit at law, because it was not stated in the bill that they were read on the trial at law; because proper steps had not been taken to make them evidence, the defendant never having been notified that they would be relied on or offered on the hearing—no previous order to admit them having been made, and no sufficient reason stated or proved why they could not be re-taken; and because the depositions contain answers, and state facts, not evidence in the present suit——because they were taken to establish a fact which the judgment at law could not——the partnership of Marr and Tarrant. These objections were overruled, and the depositions received as evidence. The defendant also objected to a decree, because the fact, whether Marr was a partner of the firm of J. Tarrant & Co. was an issue, to be tried by a jury.

At the hearing of the cause below, before the Chancellor, the defendant applied for a continuance, to enable her to prove the solvency of Tarrant at the time of the filing of the bill; that he was then solvent; and that he was, and is, engaged in New Orleans, in extensive merchandizing, and enjoying good credit. Upon this, the complainants, for the purpose of obtaining a trial at that term, admitted the residence and solvency of Tarrant, as stated in the affidavit for continuance.

The errors assigned, are,

I. The Chancellor erred in not sustaining the plea of the statute of limitations, relied on in the answer.

II. There was error in not sustaining the demurrer to the bill. 1st. For want of proper parties defendants. 2d. The complainants' remedy was at law. 3d. The complainants were not entitled to the relief sought for; nor the revival of the judgment at law against the estate of defendant's testator.

III. There was error in admitting the judgment at law, referred to in the bill of complainants, &c. as evidence, and in not excluding the same on the ground, &c. stated in bill of exceptions.

IV. The Chancellor erred in admitting the depositions of the witnesses as exhibited in the bill of complainants as evidence, on the hearing, for reasons stated in the bill of exceptions.

V. There was error in overruling the objections of the defendant below, to the introduction of the depositions of the witnesses taken in the suit at law, and in receiving the same on the hearing.

VI. There was error in overruling the objections of the defendant below to the rendering of a decree before the issue tendered in the answer was tried by a jury.

VII. There was error in rendering a decree against defendant.

VIII. The decree should not have revived the judgment at law, against the estate of defendant's testator. 1st. The decree should have been rendered, if at all, on the original consideration of the judgment, proved by competent testimony. 2d. The costs of the suit at law, should not have been decreed against defendant below. 3d. The decree should not have been rendered against defendant below, because the proofs in the cause show, that Tarrant was sol-

vent, and that fact, together with his place of *residence*, was known to the complainants below; the complainants also, not being citizens of the State of Alabama; and the subject matter of the bill, in its nature, not confined to the jurisdiction of the Courts of this State.

IX. The decree should not have been rendered for the amount of the judgment at law, because usurious sums of money are charged and allowed in the judgment for giving day of payment for advances made.

The several questions which are presented by the assignments of error in this case, have been ably and elaborately argued by the counsel on both sides, and they will be examined in the order in which they have been presented, so far as they are deemed material to the determination of the case.

I. The first enquiry presented is, as to the reliance on the statute of limitations.

By looking into the account, as exhibited in the depositions used on the trial at law, between the present defendants and Tarrant, it appears that the account commenced on the 20th November, 1824, and is continued down by various charges, from time to time, till the first of May, 1826. The account purports to have been balanced on the 11th September, 1826, by the complainants, when there was two thousand three hundred and seventy eight dollars and forty-eight cents, due. On the credit side of the account, it appears that J. Tarrant & Co. are allowed for sundry payments, commencing on the 3d April, 1826, and terminating on the 19th September, 1827, when there was a payment of twelve hundred and nine dollars and sixty three cents, leaving a balance due the complainants on that day of one thousand two hundred

and forty one dollars and seventy seven cents. This bill was filed on the twelfth February eighteen hundred and thirty-three, more than six years from the date of the last debit, but less than six years from the date of the last credit. This state of facts will render it entirely unnecessary to examine the various points which have been made upon the statute of limitations: for the law is well settled " that if there be an item in the defendant's account within six years, this will take the account of the plaintiff out of the statute, though the plaintiff's account contain no item within that period."[a] Whether, therefore, this is to be taken as an account current, the last item of which is dated 19th September, 1827, or as an account stated and acknowledged, as is contended to have been proved by the deposition of James Pitcher, and which would bring the account down to a still later period, upon which we give no opinion, it is very clear that the statute does not, in this case, interpose a good defence.

[a] Angel on Lim. 193, and the authorities cited.

The account is admitted to be between merchant and merchant, and therefore, we do not conceive that the statute which bars open accounts, at the expiration of three years, can, under any circumstances, apply. The reservation in the statute, excepting such accounts as concern the trade of merchandize between merchant and merchant, from its operation, relates exclusively to that, which fixes the limitation at the expiration of six years.

How far the questions, whether there is any bar to accounts current between merchant and merchant, and if so, whether the death of Marr, and the delay which has necessarily intervened in prosecuting Tarrant to judgment, would protect the complainants, we do not

47

find it necessary to decide, in the view which we take of the case.

II. The second assignment raises a question of the sufficiency of the bill, on the demurrer. To sustain the demurrer, the plaintiff in error, contends—

1. That the bill is defective for want of parties— Tarrant not being made a co-defendant; and,

2. That the complainants have a complete remedy at law, under the act of our Legislature, which en-acts, that whenever any cause of action may exist against two or more partners of any denomination whatever, it shall be lawful to prosecute an action against any one or more of them.[a]

[a] Aik. Dig. 263

1. That all persons in interest to a bill in Chancery should be made parties, is, as a general rule, un-doubtedly correct. Exceptions are, however, allow-ed to this rule, when, from the nature of the case, it is not required; or, from the situation of the party, it is difficult or impossible to reach him,[b] and also, when the residence of the party in another State is stated as a proper ground of omission. The principle appears to be, that when the case can be completely decided between the litigant parties, the circumstance, that an interest exists in another person, whom the process of the Court cannot reach, ought not to prevent a decree upon the merits.

[b] 12 Wheat. 197 10 ib. 167.

In this case, the object of the bill is to obtain satisfaction of the entire demand of the complainants, out of the personal estate of the defendant's testator. The surviving partner, Tarrant, is alleged to be beyond the jurisdiction of the Court, and to be insolvent. Admitting this to be true, as the demurrer does, there is no absolute necessity for his being a party; and the bill ought not to be dismissed on that ground.

2. Neither does the Court think that the second ground is sufficient to sustain the demurrer.

By the Common Law, the debts of partners are joint; and by the death of one they become extinguished as to his testator or intestate, and can only be revived in equity. ¡ During the existence of the partnership, the partners must be sued jointly, and we do not think that our statute, which authorises one or more to be sued separately, has subverted the whole doctrine of joint liability and survivorship, (which it must do, upon the principles contended for by the defendant) and placed partners and their executors and administrators upon the footing of joint and several obligors or promissors. The statute has not expressly declared it, and we are not prepared to do so by construction. This, the Legislature has done in the case of joint obligors, and has expressly authorised suits against any one of them, or his administrator or executor. But to give this statute that construction, would have the effect of subjecting the assets of deceased partners to the payment of the partnership debts, while the surviving partner would have the exclusive control of all the partnership funds, out of which the partnership debts ought, in justice to be paid. Where a suit has actually been commenced against a partner under the statute, and he dies pending the suit, it may be, that the suit could be revived and prosecuted against his executor or administrator: the Court are inclined to that opinion. Having asserted his right under the statute, the creditor ought not to be deprived of his remedy under it by any act not within his control: farther than this a majority of the Court would not go, in the construction of this statute; and they do not intend to commit themselves upon this point, as it is not now necessary to be decided.

The III, IV, and V assignments, relating to the admissibility of the judgment, the testimony exhibited with the bill, and the depositions taken in the suit against Tarrant, will be examined together.

1. As to the judgment,

That a judgment of a Court of concurrent jurisdiction, directly upon the point in controversy between the same parties, as a plea in bar, and as evidence, upon the same matter directly in question in another Court, is good, is undoubtedly true ; and that it is not evidence of any matter which comes collaterally in question, though within their jurisdiction, nor of any matter to be inferred by argument from the judgment, is equally true ;[a] and no one can be bound by a verdict or judgment, unless he be a party or privy, or possess the power to make himself a party. For otherwise he has no power of cross-examining the witnesses, or of adducing evidence in furtherance of his rights : he can have no attaint, nor challenge the inquest, or appeal, or writ of error. In short, he is deprived of the means provided by law for ascertaining the truth, and consequently it would be repugnant to the first principles of justice that he should be bound by the result of an inquiry, to which he was altogether a stranger.[b]

In this case, the judgment was used and taken as the basis of the decree, and yet the defendant in this bill was neither a party or privy to the suit at law, and had no power to make herself a party.

2. And this rule is equally applicable to the exhibits and depositions. The *party* to be affected by them must have been legally called upon to cross-examine the witnesses, and have had the opportunity to do so, for otherwise the great and ordinary tests of truth are wanting, and this cannot be done unless he

be a party;[a] and hence it is a rule, that when a judg- [a] 1 Starkie, 264
ment is not evidence against a party, the depositions
taken in the case cannot be.[b]                              [b] 1 Starkie, 267

But it is contended that as Marr was a defendant
to the suit at law until his death, and had notice in
his life-time of the time and place of taking the depo-
sitions, and did in one case actually file cross interrog-
atores, his representative ought to be bound by them,
though he died before they were used, or the judg-
ment obtained. By the death of Marr the whole pro-
ceedings were abated as to him; and so far as his re-
presentative is concerned, they are to be considered
as never having had any existence. Had Marr lived and
defended the suit, he might perhaps have defeated those
depositions in various ways. They might not have
been properly taken, or properly opened, the witnes-
ses might have been interested, or their testimony
been irrelevant or contradicted, or they might never
have been read. By his death he was deprived of
all these defences, and his representative has not had
any opportunity to subject them to any of these tests.
It is therefore clear, in the opinion of the Court, that
in this branch of the case, there is manifest error.
The suit in Chancery to subject the assets of a de-
ceased partner, is a new and distinct proceeding a-
gainst a new party, and all the facts must be estab-
lished by testimony in the ordinary manner.

VI. The sixth assignment, that the Chancellor
should have directed an issue to try the fact of Marr's
being a partner, is not supported by authority. A
Chancellor may, in his discretion direct an issue, but
he is not bound to do so, except in some cases requir-
ed by statute, or in a few specified cases, of which
this is not one.[c]                                          [c] 2 Mad. 474.

VII—VIII. The 3d specification of the 7th and

8th assignments, presents a question of more difficulty than any one disclosed in the record, and one upon which the Court has been less aided by authority. The admission by the complainants, that Tarrant was at the time of the filing of the bill, and at the time of the trial residing in the city of New Orleans, and that he was and still is solvent, and in good credit, places the case upon an entirely different footing from that set out in the bill.

That the complainants have obtained a judgment against him in conformity with the laws of this state; that the execution has been returned *nulla bona ;* that it is admitted there are no effects of the firm within this State, upon which the judgment can be levied; and that the surviving partner has removed himself and his effects beyond the jurisdiction of our Courts, presents a strong case for the assertion of the complainants' claim against the assets of the deceased partner, which are admitted to be sufficient to pay this and all his other debts, cannot be denied. Yet there is no principle which appears to be better established, than that in order to maintain the jurisdiction of a Court of Equity, there should be an absolute discharge or insolvency of the surviving partner. " If he is liable at law and is able to pay, the bill cannot be sustained."

[1 Gallison 385]

It is asserted, by Mr. Justice *Story,*[a] that "it is perfectly well settled that equity will not lend its aid to reach assets in the hands of executors, when a complete, adequate and effectual remedy at law exists against the surviving partner." Such also is the authority of Chancellor *Kent,*[b] after a minute examination of all the English authorities upon the subject.

[b 2 Johns. Ch. R. 508.]

At law the debt is extinguished as to the deceased partner, and the creditor is not bound to use any dili-

gence (such as would be required in case of an en-
dorsed note.)    He may deal with the survivor for a
time, and let the debt of the firm remain unpaid, and
yet in case of subsequent insolvency may resort to the    1 Mer. R.547
deceased partner's estate.

That great inconvenience may often arise by the
removal of surviving partners, is no doubt true ; but
still the rule must not be impugned, to remedy the
inconvenience.    In this case, the removal of Tarrant
may create delay ; but still it cannot be said the com-
plainants are without a *complete, adequate, and effect-
ual remedy*, at law.

The city of New Orleans is a prominent city of
this Union : her commercial intercourse with New
York, where the compl'ts reside, is as great and in-
timate, as with us.    The Courts of Louisiana, and
that of the United States, in that State, are open to
the compl'ts, and in point of fact, they might as well
have gone there, in the first instance, as to have
come here; and they can go there now.    There is
nothing local in the contract.    Tarrant has not ob-
tained a legal discharge from the debt, and he is sol-
vent, by the admission of the complainants.    Equity
says, they must therefore pursue the remedy there ;
yet, they may ultimately resort to the estate of Marr,
and recover the debt here.

A case might be imagined, in which the absence
of a surviving partner, though no legal discharge
or insolvency was proved, would present a case
for relief in equity : but as the case now stands, the
Court are constrained to decide, that the admission
of the solvency of Tarrant, is fatal to the bill.

IX.  There is also error in the mode of computing
interest, as set forth in the 9th assignment.    The
law does not allow rests, or the computation of inter-

est upon interest, by re-stating the account every six or twelve months, and adding interest to the principal sum : and no custom or agreement to that effect, can alter the law.   Interest may be charged on an open account, when by the. terms of the sale, the contract stipulates for a certain period of credit: but the mode of computation is to charge interest on the debt up to the date of the payment, and deduct the payment from the whole debt; and so, as often as payments are made.    This is the rule in Chancery in New York, where this contract was made, and where it was to be executed.[a]

<a id="margin">a1 Johns. Ch. R. 13.</a>

From this view of the case, it follows, that the decree of the Chancellor below must be reversed, and the bill dismissed.