# R. W. SMITH & CO. v. MALLORY'S EX'R.

1. Partnership creditors are not entitled to share *pari passu* with the separate creditors in the estate of a deceased partner, when it is insufficient to pay its separate debts, and the surviving copartner, though insolvent, has a joint fund in his hands.

2. The object of the act of 1839 (Clay's Digest 324 § 67), was not to affect in any way the rights which a separate creditor had against the estate of the

deceased partner, but simply to allow the partnership creditor to assert his claim against such estate in a court of law, instead of resorting to a court of equity.

3. The act of 1843 was intended to make all the debts equal in degree—to place simple contract debts on the same footing with debts by judgment and specialty; but it was not intended to fasten upon the estate, to the prejudice of separate creditors who had a superior equitable and legal right, claims which, without reference to the statute, could not have been asserted against the estate, either at law or in equity.

APPEAL from the Court of Probate of Mobile.

THE estate of George M. Mallory having been declared insolvent, the appellants, Robert W. Smith & Co., filed as a claim against his estate certain notes which they held against the firm of George M. Mallory & Co., which was composed of said Mallory and one John Meldrum. On the trial of the case, it was admitted that these notes were executed by said firm, during the lifetime of said Mallory, in the usual course of their business; that the appellants had brought suit on them, after the death of Mallory, against said Meldrum, the surviving partner, and had obtained a judgment against him for the amount due; and that an execution had been issued on this judgment, and returned "no property found."

In support of their claim, the appellants offered the deposition of said John Meldrum, who testified, that he became a member of the firm of George M. Mallory & Co. in March, 1851; that said firm was engaged in the commission business, and also bought bagging and rope; that the partnership continued until the death of Mallory, which occurred on the first of January, 1852; that said Mallory was considerably indebted at the time of the formation of said partnership; that his capital principally consisted of a plantation and negroes in Greene County, Alabama; that Mallory stated to him that he intended to sell said plantation and negroes at an early day, convert them into money, and bring it into his business; that there was but little cash in the concern, and this statement of Mallory was the inducement for witness' forming said partnership, and otherwise he would not have entered into it; that he was Mallory's book-keeper at the time of the formation of said partnership, and the

same set of books was continued after its formation; that there was, when witness took charge of Mallory's books, an account with Mallory's said plantation, by which the plantation was indebted to said Mallory in a large amount; that this account was continued up to the time of the formation of the partnership, when the plantation was still largely in debt; that the same account was then continued with George M. Mallory & Co., and at the time of the dissolution of said firm there was a balance against said plantation of about $6,000 or $7,000; that said firm was insolvent at the time of dissolution, and witness was then, and has continued, and is now, unable to pay the debts of said firm; that after Mallory's death witness paid some confidential debts of the firm, amounting in all to several thousand dollars, with the assets of the firm, and a large amount of these confidential debts is still due; that the assets realized by the firm, after Mallory's death, without considering the debts due by the firm, were some $10,000 or $15,000, a part of which was employed in paying off confidential debts, as aforesaid.

Said Meldrum further testified, on cross examination, that he has no individual claim against said Mallory's estate, and will be benefited only so far as the partnership debts may be paid by his estate, and witness thus exonerated; that he wound up the business of the firm after its dissolution, and received and sold cotton for its customers, which had been promised to the firm before Mallory's death, on some of which the firm had made advances or acceptances; that he has received commissions on this cotton, for which he has never accounted with the executor, and has never had any settlement with him.

On this proof, the appellants moved the court to allow their claim against said Mallory's estate, and to order it to be paid equally and rateably with the other separate and partnership creditors; which motion the court refused to grant, and decided that all the individual creditors of the estate should be paid in full before the partnership creditors could receive anything. The appellants excepted to this ruling of the court, and they now assign it for error.

WILLIAM G. JONES, for the appellant:

1. This case, it is submitted, is fully covered and settled,

in favor of the appellants by the decision of this court in the case of Emanuel v. Bird, 19 Ala. 596. In that case there was a partnership fund ; so what is said about there not being any partnership fund, is merely an *obiter dictum.*

2. It is supposed that this case can be distinguished from that, on the alleged ground, that in that case there was no partnership fund, whilst in this there was at one time some partnership fund, to which the partnership creditors might resort: But under the proof in this case, there was no ground, in fact, for such distinction. The plaintiffs, in their affidavit, made on filing their claim, expressly state that Meldrum, the surviving partner, is insolvent; thus showing their right to proceed against the executor of the deceased partner, under the provisions of the statute in Clay's Digest 324 § 67. The allegation of Meldrum's insolvency is not denied by the executor ; neither does the executor, by his objection filed to the claim, pretend or allege that there was any partnership property or effects to which the plaintiffs could resort. The objection does not present any legal valid defence against the claim. But the plaintiffs, in fact, proceeded against the surviving partner, and obtained judgment against him, on which execution was returned "*nulla bona*';' thus proving, legally, the insolvency of the firm and the surviving partner, and bringing themselves fully within the statute above referred to. Besides this proof, Meldrum himself was examined as a witness, and proved positively the insolvency of the firm and his own insolvency.

3. The statutes of Alabama (Clay's Dig. 323 § 63 ; *ib.* 324 § 67 ; *ib.* 192 § 2) have materially changed the common law, as to the liability of the estate of deceased partners for partnership debts. Previous to the passage of these statutes, a partnership debt was considered, at law, as only joint, and not joint and several. As a consequence of this, a partnership creditor could not sue one of the partners : he was obliged to sue all. If one died, the creditor could only sue the survivor, and had no right of action against the representatives of the deceased partner, at law. This is all changed by these statutes. Now the debt is expressly made joint and several ; either one or more of the partners may be sued, if all are living ; and if one die, his executor or ad-

ministrator may be sued at law, on affidavit of the insol⁻vency of the survivor being filed, as was done in this case, or even without such affidavit.—Clay's Dig. 324 § 67. Our laws in relation to insolvent estates provide for the payment of all debts of the decedent equally, and *pari passu*. A debt against a partnership, having been made joint and several, is as much a debt against the decedent as any other note made by him and another would be. It is embraced in these laws.—19 Ala., *supra*.

4. This construction has been put upon similar statutes of other States.—Spring's case, 1 Ashm. 347; 5 S. & R. 78; 6 Ohio Rep. 103 ; 7 S. & M. 28 ; 8 Martin, N. S., 599 ; La. Cond. Law Rep. 631 ; Martin & Yerger 399 ; 1 American Leading Cases 326; 10 Met.; 5 Cranch; 2 R. & M. 494.

5. It will be observed, that the only objection made by the executor to the claim, was, that it was a partnership debt, without alleging that there was any partnership fund or any solvent surviving partner. It was, therefore, no answer to the claim ; at all events, the burthen to prove that there was a partnership fund or a solvent surviving partner, was on them.

6. Though there may have been some funds of the firm at the death of Mallory, yet there were none at the time of settlement ; and that is the time to which the court should look.

7. It is contended, that under our statutes, the partnership creditors have a right to proceed against the representatives of the deceased partner, no matter what may be the condition of the firm, or the surviving partner, as to solvency.

8. The proof makes out a *prima facie* legal claim, and the *onus probandi* was on the executor, to show facts sufficient to discharge the estate. This proof he has not made.

A. F. HOPKINS, *contra :*

The general rule which regulates the right to priority of payment, as between the partnership creditors and the separate creditors of the deceased partner, is the same in equity as in bankruptcy. The rule secures to joint creditors the right of priority of payment out of the joint estate, and to separate creditors a like priority of payment out of the separate estate

of the deceased partner.—Story on Partnership, §§ 363, 376, 380; Coll. Part. 775, § 920; 19 Ala. 602. The only one of three exceptions to this general rule, which it is now necessary to notice, is, that if there had been no partnership effects at the death of Mallory, the surviving partner being insolvent, the joint creditors would be entitled to share with Mallory's separate creditors in his individual estate.—Story's Part. § 378.— While it is admitted that the surviving partner is insolvent, he proves that the assets of the firm, at Mallory's death, were from $10,000 to $15,000, and that with these he has paid partnership debts to the amount of $5,000 or $6,000.

A joint estate, however small, secures to the separate creditors the right to priority of payment out of the separate estate of the deceased partner.—Story on Partnership, § 380; Coll. Part. § 926. A partnership fund to the amount of five pounds has been decided to be a complete bar to an application for payment by the partnership creditors out of the separate estate of the deceased partner, even though such joint fund had been created by the separate creditor's purchasing some of the partnership assets, actually worthless, only for the purpose of creating such joint fund.—Coll. Part. § 926, p. 779. The foregoing principles of law are recognized by the Supreme Court of Alabama, in the case of Emanuel v. Bird, 19 Ala. 603, where the joint creditors were allowed to share with the separate creditors in the individual estate of the deceased partner, on the express ground that there was no partnership fund at the death of the partner, and that the surviving partners were insolvent.—19 Ala. 603; 1 Hare & Wallace, pp. 312 to 324. Several of the joint creditors, and among them R. W. Smith & Co., have received part payment of their debts out of the partnership fund, and yet they now claim to share equally with the separate creditors in the separate estate of Mallory.

This is a judicial proceeding, and accomplishes the object of a suit. The principle is well settled, that if a joint creditor sue out a joint *fiat*, he thereby binds himself to resort to the joint property only; and the rule is the same, where a *fiat* is issued, on the application of a joint creditor, against the surviving partner. Smith, therefore, by suing and recovering a judgment against the surviving partner, barred any claim, under any circumstances, which he might have had against the sepa-

rate estate of Mallory.—Coll. Part. § 925; Story's Part'
§ 379. It has been determined in Maryland, that partnership
creditors must be postponed in the distribution of the separate
estate of a deceased partner, to his individual creditors, whether
there is partnership property or not.—1 Har. & G. 96, 107;
1 Hare & W. 310, 318; 5 Metcalf's R. 575.

In the case of Emanuel v. Bird, 19 Ala. R. 603, this court
recognized the power of the Probate Court to act upon the rule
which obtains in courts of equity and in bankruptcy, for regu-
lating the priority of payment among these two classes of cred-
itors; and it necessarily has the power to decide between their
conflicting claims. The record shows, too, that Mallory's
individual estate is not sufficient to pay his individual creditors
in full.

GOLDTHWAITE, J.—The evidence clearly shows, that
the estate of the surviving copartner, Meldrum, was insol-
vent; but it also, as we think, shows a joint fund in his
hands, and as the estate of the deceased copartner is insuf-
ficient to pay its separate debts, the sole question is, whether
under these circumstances, the partnership creditors are enti-
tled to share *pari passu* with the separate creditors, in the
estate of the deceased partner.

That the joint creditors have a primary claim upon the
joint fund, to the exclusion of the separate creditors, in the
administration and distribution of the estates of bankrupt
or insolvent partners, is too well settled, at this day, to re-
quire the citation of authority; and this right, on the part of
the joint creditors, was made the basis of the equity of the
separate creditors to a primary claim upon the separate
property of bankrupt partners, by the English Chancellors
before Lord Thurlow.—*Ex parte* Crowder, 3 Vern. 706;
Twiss v. Massey, 1 Atk. 67; *Ex parte* Hunter, *ib.* 227; *Ex
parte* Cook, 2 Pr. Will. 500. Chancellor Thurlow, how-
ever, thought that the "justice of the case would be, that
both the joint and the separate creditors should come in
*pari passu,* upon both funds" (*Ex parte* Cobham, 1 Bro. 576;
*Ex parte* Hodgson, 2 Bro. 5; *Ex parte* Page, *ib.* 119; *Ex
parte* Flintum, *ib.* 120); and the distinction which previ-
ously existed, between joint and separate creditors, in the

distribution of the assets of a bankrupt partner, was done away during his administration. The successor of Thurlow, Lord Loughborough, in *Ex parte* Elton, 3 Ves. 238, restored the rule which had previously obtained ; defending it on general principles of equity, and declaring "that it had long been settled, and it was not possible to alter that, that each estate was to pay its own creditors." Since then, although Lord Eldon is not fully satisfied with the rule, he concedes it upon the principle of *stare decisis* (*Ex parte* Kensington, 14 Ves. 448; Dutton v. Dutton, 17 *ib.* 207) ; and the question is now regarded as a settled one in the English courts.—Story on Partnership § § 376, 377, and cases there cited.

In the American courts, the decisions are contradictory. The question has been ably discussed, and the correctness of the rule denied, in Pennsylvania, Connecticut, Ohio and Tennessee (The Estate of Spivey, 1 Ashm. 347; Camp v. Grant, 21 Conn. 53 ; Grosvernor v. Austin, 6 Ohio 103 ; Bell v. Newman, 5 S. & R. 78) ; but it has received the judicial sanction of the Supreme Court of the United States, in Murrell v. Mill, 8 How. 414, and has been recognized as the law in the courts of New York, Maryland, New Jersey and South Carolina.—Wilder v. Keeler, 3 Paige 168 ; Egbert v. Wood, *ib.* 518 ; Payne v. Matthews, 6 *ib.* 20 ; Murray v. Murray, 5 Johns. Ch. 60, 72 ; Jackson v. Cornell, 1 Sand. Ch. 343; McCulloch v. Dashiel, 1 Harr. & Gill. 96; Camak v. Johnson, 1 Green's (N. J.) Ch. R. 163 ; Tunn v. Trezevant, 2 Dess. 264 ; Waddrup v. Price, 3 *ib.* 203 ; Hall v. Hall, 2 McCord Ch. 269 ; and see, also, Arnold v. Hamer, Frem. Ch. 509, and Oakley v. Rabb, *ib.* 546. Judge Story, while he considers the foundation on which the rule rests, as "questionable and unsatisfactory, admits it to be firmly established,"—Story on Part. § § 377, 382. Chancellor Kent declares in its favor, both upon principle and authority; and it may be added, as an argument in favor of the equity of the rule, that it is found in both the Roman and French law. Dig. Lib. 14, tit. 4, c. 5 ; Pothier Pand., Lib. 14, tit. 4, n. 8 ; Durenton, Cours de Droit Franc, Tome 17, § 467, p. 512, 513, 514. While it may be conceded, that the rule is not free from objection, it is doubtful whether any other

would meet out equal justice; and we deem it better, in such cases, to decide with the weight of authority, which is clearly in support of the rule as established in England.

We have said nothing as to the case of Emanuel v. Bird, 19 Ala. 596, for the reason, that the ground on which that decision rests, is, that there was no joint fund, and no solvent partner; which made it an exception to the general rule.—*Ex parte* Hall, 9 Ves. 349; *Ex parte* Ackerman, 14 *ib.* 604; *Ex parte* De Tastet, 1 Rosc. 10; *Ex parte* Buckle, 1 Glyn. & Jam. 34; McCulloch v. Dashiel, *supra*; Story's Part. § 378.

But it is urged, on the part of the appellants, that the rule we have considered is changed by the operation of our statutes. The act of 1818 (Clay's Digest 323 § 63) does not change the obligations of partners from joint to joint and several.—Marrs v. Southwick, ˌ2 Port. 370; Van Pheel v. Connolly, 9 Port. 452; Trann v. Gorman, *ib.* 456; and in relation to the act of 1839 (Clay's Digest 324 § 67), it is to be remarked, that before its passage, a creditor of the firm could not sue the estate of a deceased copartner at law.—Coll. on Part. §576. At law, the debts of partners were joint; and by the death of one, they were extinguished as to his representative, except in equity.—Marrs v. Southwick, *supra*. In that court, he could proceed at once against the representative of the deceased copartner, without reference to the question whether the joint estate was solvent or insolvent, or to the state of accounts between the partners.—Devaynes v. Noble, 1 Mer. 529; S. C. 1 Russ. & M. 495; Wilkinson v. Henderson, 1 M. & K. 532; Thorpe v. Jackson, 2 Y. & C. 553; Coll. Part. § 581. But when the creditor has obtained a decree for the payment of his debt out of the estate of the deceased partner, under the equity of the principle we have already determined, he will still be postponed to the separate creditor, unless there is no joint estate.— Gray v. Chiswell, 9 Ves. 118: Story on Part. § 363, and cases there cited. By the statute referred to, however, the rule was partially changed, and the creditor of the firm allowed to assert his claim, at law, against the representative of the deceased partner, upon making affidavit that the surviving copartner was insolvent, or even without such affidavit; but in the last case, he was not permitted to sue out execution, until a return of *nulla bona* against the surviving copartner. The object of the

statute was, not to affect in any way the priority of right which the separate creditor had against the estate of the deceased copartner, but simply to allow the creditor of the firm to assert his claim against such estate in a court of law, instead of a court of chancery. If the estate of the deceased partner was solvent, he obtained his debt by a more simple process; but if insolvent, the creditors who had a superior claim preserved their advantage.

Neither, in our opinion, is the law changed by the act of 1843 (Clay's Digest 192 § 2) providing for the distribution of the assets of insolvent estates, amongst all the creditors *pro rata*. As we have seen, the claim of the joint creditors was, at law, extinguished against the representative of the deceased copartner; and neither in law, under the act of 1839, nor in equity, if there was a joint fund, could he obtain payment, except out of the surplus of the separate estate left after the payment of the separate creditors. There being a joint fund, he was not a creditor, unless there was a surplus of the separate fund. In other words, he had no right, either at law or equity, to charge any portion of the separate estate of the deceased partner, except the fund remaining after the discharge of the separate debts. The act of 1843 was intended to make all the debts equal in degree,—to place simple contract debts on the same footing with debts by judgment and specialty; but it was not intended by that act to fasten upon the estate, to the prejudice of creditors who had a superior equitable and legal right, claims which, without reference to the statute, could not have been asserted against the estate either in law or equity.

Judgment affirmed.