Pierce *v.* Faunce.

*Defendant defaulted,*—*to be heard in the assessment of damages at Nisi Prius.*

Plaintiff, *pro se.*

*Hammons & Gibson,* for defendant.

----

JOSIAH PIERCE, *in Equity, versus* JAMES FAUNCE *and another.*

In *equity*, all the parties in interest must be made parties to the suit; and, in a suit seeking to reform a deed, the holder of an equity of redemption, not barred by the lapse of time, under a mortgage not foreclosed, is a party in interest, and must be notified.

Likewise, the grantor in the deed sought to be reformed.

A purchaser of real estate, having notice of a prior unregistered deed, or other claim thereto, may, nevertheless, convey a perfect title to a *bona fide* purchaser having no notice of such claim.

So, also, a purchaser *without* notice of a prior equitable claim, or right, may convey a perfect title to one who *had* notice thereof. After an interest in real estate has passed to an innocent purchaser, and is discharged of its latent equities, it is thenceforth unimportant whether subsequent grantees or assignees had or had not notice of the prior equitable claims.

A mortgage is *pro tanto* a purchase, and the *bona fide* mortgagee or assignee of the mortgage, without notice of a prior claim, is entitled to the same protection as a *bona fide* grantee without notice.

BILL IN EQUITY.

The bill sets forth that, in June, 1842, William Prince being the owner of sixty-seven acres of land in Hebron, conveyed to him by one Waterman, and described as being " on

the north side of lot marked G," and William Cousins having recovered judgment against said Prince and others, Cousins obtained execution, and levied it upon a certain described part of the aforesaid land of Prince. In February, 1845, Prince not having redeemed the premises, Cousins conveyed them to the plaintiff for a consideration of $362,11.

The bill further alleges, that previously, in 1834 or 1835, Prince bargained with one Dean to sell him twenty-five acres from one end of the lot he had bought of Waterman; that subsequently, by Dean's request, one Hilborn was employed to draw a deed of the land bargained for, conveying it to Mary Chipman; that Hilborn, being inexperienced, described the premises conveyed as twenty-five acres of land " on the north side of lot G," " being the same land I purchased and was deeded to me by Robert Waterman;" that, in this shape, the deed was executed and delivered; that, in 1838, Mary Chipman conveyed the same land to Orville Byram, who mortgaged it to Amos Chipman to secure notes of Byram for $100; that the notes and mortgage were transferred by Chipman to E. R. Holmes, and by the latter to James Faunce; and that, in 1848, Faunce conveyed the same land by deed to Harriet H. Page.

The bill further alleges, that the several parties to the successive conveyances had knowledge that it was intended by Prince to convey to Mary Chipman twenty-five acres and no more, and that they claimed and occupied no more than twenty-five acres, until 1851 or 1852, when Faunce and Harriet H. Page, the defendants, entered upon the land embraced in Cousins' levy, and in his deed to the plaintiff, and claimed it as embraced in their conveyances.

The bill declares that the plaintiff has been deprived of possession of the premises by reason of the error in the deed from Prince to Mary Chipman, followed by similar errors in subsequent conveyances, and prays that the deed from Prince to Mary Chipman " may be so reformed as to express and carry out the true intent and meaning of the parties thereto," and that the defendants be " forever enjoined and prohibited

Pierce *v.* Faunce.

from asserting any right, title or claim whatever to the premises described in the said levy," and in the deed from Cousins to the plaintiff.

The defendants, in their answer, deny any knowledge of any error or mistake in the deed from Prince to Mary Chipman, or in the subsequent deeds.

The depositions of Amos Chipman and Mary Chipman were introduced by the plaintiff, tending to prove that Dean bargained for and bought of Prince only twenty-five acres; that he entered upon and occupied no more; and that Prince occupied the remainder of the Waterman lot.

There was testimony tending to show that Byram occupied and claimed only twenty-five acres; also, that Faunce, one of the defendants, had inquired of Chipman how much land was conveyed by Prince, and Chipman told him twenty-five acres and no more, and that Faunce told several witnesses that he should never claim but twenty-five acres.

*Howard & Strout,* and *L. Pierce,* for the plaintiff.

It is now clearly proved that the deed from Prince to Mary Chipman was intended to convey only twenty-five acres from the northerly or north-easterly part of lot G. Dean bargained with Prince for so much and no more, and it was not intended that the deed should convey any more. The consideration paid was for twenty-five acres.

The successive parties, who have since held under the deed from Prince to Mary Chipman, have claimed and occupied but twenty-five acres, from 1834 or 1835, to about 1852.

But this Court, in the case of *Pierce* v. *Faunce,* 37 Maine, 63, has given a construction to the deed, declaring it to include the whole of lot G, containing sixty-seven acres.

The defendants deny that they had any knowledge or belief that there was any error in the deed from Prince; but the testimony abundantly shows that Faunce knew of the original intention to convey only twenty-five acres.

The claim which the defendants assert to the remaining forty-two acres is inequitable, and a fraud upon the plaintiff.

Cousins and Prince, at the time of the levy, both understood and believed that the deed to Mary Chipman conveyed but twenty-five acres. The plaintiff is an innocent and *bona fide* purchaser of the land taken by the levy, and, as such, invokes the protection of the Court.

The fact that Faunce, up to the time of his conveyance to the other defendant, had occupied but twenty-five acres, and never asserted title to any more, may justly charge her with notice of the plaintiff's claim and of the alleged mistake.

It is competent to prove the alleged mistake by parole testimony. *Peterson* v. *Grover*, 20 Maine, 363; *Farley* v. *Bryant*, 32 Maine, 474; *Lumbert* v. *Hill*, 41 Maine, 475; *Tucker* v. *Madden*, 44 Maine, 206.

*Record, Walton* and *Luce*, for the defendants.

1. The plaintiff is not in a condition to entitle him to interfere for the correction of the alleged error. Nothing was acquired by the levy in favor of Cousins, and, therefore, nothing passed by his deed to the plaintiff. The plaintiff is not assignee of the debt or judgment against Prince and others. The judgment is not satisfied, and Cousins is entitled to have it revived and enforced. No judgment given in the case at bar could be pleaded to prevent a new execution in favor of Cousins.

2. The error alleged is not such a one as a court of equity can properly correct. It does not clearly appear where the twenty-five acres, said to have been conveyed in Prince's deed, should be located. But a small part of it has ever been improved, and no light can be derived from that source. It would be impracticable for the Court to decide what part of the lot should be included in the twenty-five acres, and what part excluded.

3. The error, if any, does not consist in omitting or inserting words, but in a misapprehension of the effect of the language used. This is such an error as a court of equity cannot correct. *Farley* v. *Bryant*, 32 Maine, 474.

4. The title has been purged of any supposed defect, by

Pierce v. Faunce.

passing through the hands of one or more innocent purchasers without notice. 1 Story on Equity, § § 108, 139, 165, 409, 410, 434, 435, 1503 a; *Whitman* v. *Weston*, 30 Maine, 285; *Trull* v. *Bigelow*, 16 Mass., 419; *Boynton* v. *Rees*, 8 Pick., 329; *Fletcher* v. *Peck*, 6 Cranch, 87; *Dana* v. *Newhill*, 13 Mass., 498.

5. All persons interested in the land are not made parties. The defendant Faunce is but a mortgagee, and the right of redemption is outstanding and unextinguished. It is a settled principle in equity that all persons, to be affected by the result of the suit, must be made parties. Story on Equity, § 75; *Davis* v. *Rogers*, 33 Maine, 222; *Bailey* v. *Myrick*, 36 Maine, 50; *Morse* v. *Machias Water Power Co.*, 42 Maine, 119. See also, *Dockray* v. *Thurston*, 43 Maine, 216.

The opinion of the Court was drawn up by

APPLETON, J.—The bill in this case alleges that one William Cousins, having recovered judgment against William Prince and others, in the late District Court, held on the third Tuesday of June, 1842, in and for the county of Cumberland, caused the execution, which issued on said judgment, to be extended upon the premises, which form the subject matter of the present litigation, as the property of said Prince; that said Cousins, the time for redeeming said levy having expired, conveyed the same on the 19th of February, 1842, to this complainant; that said Prince, on the 26th of October, 1836, conveyed certain premises to Mary Chipman, which, according to the legal construction of the language of the deed, but contrary to the agreement and intention of the parties thereto, transferred the title of the land, upon which the execution in favor of Cousins against Prince and others was subsequently extended, to the grantee; that the legal title thus vested in Mary Chipman passed through various intermediate conveyances to the defendants; that the different parties to these several transfers, as well as these defendants, had actual knowledge of the mistake in the deed from Prince to Chipman, when they received their titles, and

held the premises subject to the equitable rights of this complainant.

The prayer of the bill is, that the deed from Prince to Chipman may be so reformed as to express and carry out the true intent and meaning of the parties thereto, and that the defendants be forever enjoined and prohibited from asserting any right, title and claim whatever, to the premises described in the levy, &c.

The defendants deny that they, or those through whom the title passed to them, had any knowledge, information or belief of any error or mistake in the description of the premises conveyed in and by the deed sought to be reformed.

According to the construction given by the majority of this Court, in *Pierce* v. *Faunce*, 37 Maine, 63, to the deed from Prince to Chipman of Oct. 26, 1836, in the opinion delivered by Mr. Justice HOWARD, the premises, upon which the execution of Cousins was afterwards extended, by that deed were transferred to the grantee therein. It follows, therefore, that when the levy, under which the complainant derives his title, was made in June, 1842, the judgment debtor, Prince, had no legal interest whatsoever in the land levied upon.

The power of this Court, as an incident to its chancery jurisdiction, upon full and satisfactory proof of a mistake in a deed, to compel its reformation, and to enjoin the party seeking to take advantage thereof from claiming any right under it, is too well settled to be even questioned.

But, assuming the mistake in the deed to be one which a court of equity would, as between the parties thereto, or those claiming under them, with notice, reform, and that its existence is clearly established, there are grounds taken in the defence, which must prevent the complainant's recovery.

(1.) It appears that Mary Chipman, on April 14th, 1838, conveyed the premises in controversy to Orville Byram, who at the same time gave a mortgage back to secure the purchase money. This mortgage, after various mesne assignments, became ultimately vested in the defendant Faunce, and constitutes the only title he has to the land. When the

bill was commenced, the equity of redemption was not barred by lapse of time. Nor is the mortgage shown to have become foreclosed in any mode. The interest of the mortgagee is only to the extent of his mortgage. No principle is better established than that all the parties in interest should be made parties to the bill. The holder of the outstanding equity of redemption is not made a party. If not a party, he would not be bound by any decree which might be made, nor would the rights of the parties be finally determined.

The deed to be reformed is one from Prince to Chipman, yet none of the parties to that conveyance are before us. The bill seeks to reform a deed without notice to or summoning the grantee, whose rights may be materially affected by the proposed reformation of his title.

That the bill cannot be sustained, without the proper parties, and that the Court will take notice if they are not before it, was settled in *Davis* v. *Rogers*, 33 Maine, 222, in *Bailey* v. *Myrick*, 36 Maine, 50, and in *Morse* v. *Machias Water Power*, 42 Maine, 119.

(2.) It has been repeatedly determined that a purchaser, having notice of an equitable claim which would affect his conscience, may convey a perfect title to a *bona fide* purchaser without notice; and, the title thus becoming perfected in such purchaser without notice, he may transfer a perfect title to one having notice. The grantee takes the premises discharged of its latent equities. *Mott* v. *Clark*, 9 Barr., 399. So if a purchaser, with notice of a prior unregistered deed or other claim upon real estate, afterwards convey the same to a subsequent *bona fide* purchaser, who has no such notice, the latter is entitled to protection against the prior equitable claim to the property. A purchaser with notice, from a prior purchaser, who was entitled to protection as a *bona fide* purchaser without notice, is himself entitled to protection against the previous equitable claim which was invalid as against his grantor. *Vbrick* v. *Briggs*, 6 Paige, 323.

"We cannot see," remarks PARKER, C. J., in *Trull* v. *Bigelow*, 16 Mass., 406, "that the knowledge of an antecedent fact,

which had lost its effect upon the title of the parties, can be material. He knows that the title was defective in one of the persons through whom he claims; and he also knows that the defect was cured, and the stain upon the title effaced. There seems no reason why, as he is a *bona fide purchaser* of him who had an unimpeachable title, he should not have the title unimpeached in his own hands." These principles equally apply, whatever may be the defect in the title as between the parties to the conveyance.

The mortgage of April 14th, 1838, given by Byram to Chipman, was, on December 6th, 1843, assigned by Chipman to E. R. Holmes. It is alleged in the bill, and denied in the answer, that he had notice of the mistake now sought to be corrected. The burthen is on the plaintiff to show he had such notice. The deposition of Holmes is not taken. The deposition of Chipman, who assigned the mortgage to Holmes, neither indirectly intimates, nor directly asserts, that he had such notice. The proof is entirely silent on this point.

Holmes, then, may be regarded as a *bona fide* assignee without notice. If the fee had been conveyed to him under such circumstances, his title could not have been impeached. But a mortgage is *pro tanto* a purchase, and the *bona fide* mortgagee is equally entitled to protection as the *bona fide* grantee. So the assignee of a mortgage without notice is on the same footing with the *bona fide* mortgagee. In all cases, the reliance of the purchaser is upon the record, and when that discloses an unimpeachable title, he receives the protection of the law as against unknown and latent defects.

The mortgage being assigned to Holmes without notice, he could convey the interest thus acquired. His assignment would pass his interest, and it thenceforth became unimportant whether the subsequent assignees had or had not notice.

If the mortgage is not foreclosed, the proper parties are not before us. And if they were, the bill cannot be sustained against the defendant Faunce, he having derived his title from a *bona fide* assignee.

If the mortgage be foreclosed, as the mortgage was held by

Porter *v.* Stanley.

Holmes discharged from all liability for the correction of any mistakes in antecedent conveyances, it is equally so held by his assignee, and the title would thus become indefeasibly vested in the defendant.

The result is, that the bill cannot be sustained.

*Bill dismissed.* — *Costs for defendants.*

TENNEY, C. J., and RICE, GOODENOW, DAVIS, and KENT, JJ., concurred.