## HAYDEN v. DRURY and others.

*(Circuit Court, N. D. Illinois. ———, 1880.)*

1. EQUITY JURISDICTION—MORTGAGE FORECLOSURE—PERSONAL LIABILITY OF MORTGAGOR'S GRANTEE.—The grantee of a mortgagor assumed the mortgage debt, but it did not appear that such assumption was a part of the consideration for the conveyance. A bill was subsequently filed to foreclose the mortgage, and obtain a decree for any deficiency against the grantee of the mortgagor. Pending this suit the mortgaged property was sold under a prior mortgage, and no redemption was made from such sale. *Held,* the court still had jurisdiction to pass upon the question of the personal liability of the grantee of the mortgagor.

2. MORTGAGE—MISTAKE—PURCHASER.—The grantee of a mortgagor cannot set up a mistake as against the *bona fide* purchaser of the mortgage notes before maturity.

*R. B. Bacon,* for complainant.

BLODGETT, D. J. The bill in this case was filed to foreclose a mortgage dated July 28, 1875, given by Solomon Snow and wife to secure the payments of two notes, of even date with the mortgage, for $6,000 each, payable in two and three years, respectively, to the order of the maker, and by him indorsed to J. E. Lockwood, said mortgage being subject to a prior encumbrance by trust deed to E. C. Larned, as trustee, to secure the payment of $28,000. The bill alleged that Solomon Snow, after the making of the mortgage in question, on the fourteenth of December, 1875, sold and conveyed the mortgaged premises to William C. Snow, subject to the said two encumbrances, and that William C. Snow, on the twenty-eighth day of January, 1876, conveyed the premises to Isaac M. Daggett, subject to the same encumbrances, and that Daggett, on the twelfth day of April, 1876, conveyed the premises to the defendant William Drury, subject to the said

two encumbrances, and by the deed from Daggett to Drury the latter agreed to assume and pay the said encumbrances, and that the said encumbrances formed a part of the consideration or the purchase price for the said premises, which agreement was in the following words: "Subject to a certain trust deed executed by Solomon Snow and Elizabeth L., his wife, to E. C. Larned, trustee, to secure the payment of $28,000, dated July 28, 1875, due in five years from date, with interest at 10 per cent. per annum, payable semi-annually, and also subject to another trust deed executed by Solomon Snow and wife to R. B. Bacon, to secure the payment of $12,000, dated July 28, 1875, due two and three years from date, with interest at 8 per cent. per annum, payable semi-annually, both of which said encumbrances the party of the second part herein agreed to assume and pay."

The bill further alleges a default in the payment of the interest due on the notes, which fell due April 28, 1877, which default, by the terms of said mortgage, allowed the holder of said notes to elect to declare the whole principal sum thereby secured, and the interest thereon, due and payable at once, and that such election has been made. The bill further charged that the said Joseph E. Lockwood, to whom Solomon Snow indorsed said notes, on the first of November, 1876, for a valuable consideration to him in hand paid, assigned and transferred said two notes to the complainant, who is now the legal owner and holder thereof. In the original bill the complainant prayed for a foreclosure of the mortgage and sale of the mortgaged premises, and in case the proceeds should not be sufficient to satisfy the amount due them, for a personal decree for the deficiency against the said defendant Drury.

Drury answered, admitting the making of the notes and the mortgage, the conveyance of the mortgaged premises from the mortgagor to William C. Snow, and from Snow to Daggett, and from Daggett to himself; and that the deed from Daggett to himself contained the clause of assumption as set out in the bill, but averred that there was no agreement between himself and Daggett that he should assume

and pay the said encumbrances; and that it was not the intention of the parties to the deed that he should assume said encumbrances; and that the clause in said deed expressing such agreement was inserted therein by the mistake of the scriveners who drew the same; and that he (Drury) accepted said deed without the knowledge that it contained said clause, and did not become aware of the fact that it did contain said clause until some time in July, 1877, when Daggett, for the purpose of correcting the mistakes of the scrivener, and effectuating the intention of the parties to the deed, executed and delivered an instrument, under seal, releasing the defendant Drury from the obligations to pay the said encumbrances.

On February 17, 1880, complainant filed a supplemental bill, stating, in substance, that since the filing of the original bill a bill had been filed in this court against the said Drury and others by Robert E. Kelly, the holder of the indebtedness secured by the first mortgage for $28,000, and that such proceedings had been had in said cause, that on the twenty-seventh day of June, 1878, a decree of foreclosure had been entered upon the said mortgage; and that upon the twenty-sixth day of July, 1878, the mortgaged premises were sold for the satisfaction thereof, and that no redemption had been had from said sale; and that a deed had been made to the purchaser, by the master in chancery, on the thirtieth day of October, A. D. 1879; and prayed that the amount found due by the master in this cause be entered by this court against the defendant William Drury in accordance with the assumption of the said indebtedness.

Drury's answer to the supplemental bill admits the exhaustion of the proceeds of the mortgaged premises by the foreclosure of the first mortgage, and refers to his answer to the original bill, which, he prays, may be taken as a part of his answer to the supplemental bill. The proof in this cause is mainly applicable to the questions of the fact whether or not the defendant Drury, in the purchase of the equity of redemption of the mortgaged premises, agreed, as part of the transaction, to assume and pay these two mortgage debts,

and whether or not the clause of assumption in the deed from Daggett to Drury truly expressed the contract between the parties as to the payment of the said indebtedness.

From a careful consideration of the testimony I have come to the conclusion that it was not the agreement or intention of Daggett and Drury that Drury should assume and agree to pay the indebtedness secured by these two mortgages, and that the clause in the deed to him, whereby he was made to assume and pay them, was inserted without his knowledge, and by mistake of the attorney who prepared the deed. My reasons for this conclusion are—*First*, that the preponderance of evidence on the question is largely in favor of the defendant. The testimony of Daggett, Whipple, and the defendant Drury on this point is so full and circumstantial as to leave almost no room for doubt on the question. They all testify unequivocally that it was expressly understood that Drury was not to assume the encumbrances, or either of them, and Drury said that he had no knowledge of the assumption clause in the deed to him until his attention was called to it by Mr. E. C. Larned, in April, 1877. *Second*, there was no motive or inducement for Daggett to exact such terms from Drury, his grantee, as Daggett had not assumed or agreed to pay the indebtedness. There was, therefore, no reason why he should gratuitously interest himself in securing a contract from Drury for the benefit of the mortgagee. *Third*, the nature of the transaction weighs heavily against the probability that any sane busines man would have assumed such a liability. The proof shows that Drury exchanged a farm in Mercer county, this state, for this and two other pieces of heavily-encumbered Chicago real estate; that the transaction took place in 1876, and that on the twenty-fifth of July, 1878, only a little over two years after, the property in question was sold under the decree of foreclosure on the first mortgage for $28,000, and that no surplus was obtained by such sale to apply on this mortgage. This circumstance, in my mind, tends strongly to corroborate the testimony of Daggett, Whipple, and Drury, that Drury only intended to purchase the equity, but did not intend to assume the prior indebtedness.

He might have been willing to give his farm for the chance that all these three pieces of property would realize something over and above encumbrances, but it is hardly reasonable to believe, in view of what must have been its then value, that he would have assumed so grave a responsibility as to make himself personally liable for this heavy prior indebtedness. It is true that Mr. Hutchinson, who drew the deed from Daggett to Drury, testifies that he must, from the course of business, have drawn the deed according to instructions, and would not have inserted this assumption clause unless directed to do so; but his directions may have come from some one who had no authority in the premises, or who was acting under a mistake or misunderstanding as to the terms of the contract.

Two questions of law arise upon the facts in this case as I now find them—*First*, can the complainant maintain this bill solely for the purpose of obtaining a personal decree against the defendant Drury, assuming that he did agree to pay the mortgage debt held by the complainant? *Second.* It appearing as an admitted fact in the case, as it is alleged in the bill and not denied in the answer, that the complainant purchased the notes secured by this mortgage in November, 1876, for value, before any default or maturity thereof, and after the defendant Drury had, by the deed to him which then appeared of record, apparently assumed to pay this mortgage debt, can he now be heard to say, as against this complainant, that he did not assume such payment? In other words, must the court presume that the complainant purchased these notes upon the faith of Drury's assumption and agreement to pay the same.

As to the first question, it is an established rule that when a court of equity has once obtained jurisdiction of the parties and subject-matter, it will retain it for the purpose of doing complete justice between the parties. The bill in this cause was filed for a foreclosure of the mortgage in question. The citizenship of the parties brought the subject-matter within the jurisdiction of the court. The relief prayed was such as the court was adequate to give. It could not only

award a decree of foreclosure and sell the mortgaged property, but could, under the ninety-second rule in equity, award a personal judgment against whoever was liable for any deficiency after the application of the proceeds of the sale; and, it seems quite clear to me, it does not lose that jurisdiction by the fact that the subject-matter of the mortgage has been sold by another decree to satisfy a prior encumbrance. The court can now, if it were deemed necessary, enter a decree of foreclosure and direct a sale of the mortgaged premises, and, after a sale for a nominal amount, could give a personal judgment for the deficiency; but, for my part, I do not deem it necessary to go through an empty form of foreclosure and sale to ascertain what the court knows judicially already, that the mortgaged property will furnish no fund to satisfy this mortgage debt.

There is, however, another aspect of this cause upon which the jurisdiction of the court to enter a decree on the merits of this cause may be retained. The complainant seeks by his bill to make a remote grantee of the mortgagor personally liable for this indebtedness. In a number of cases like this, where the assumption and agreement to pay the mortgage debt were declared to be a part of the purchase money or consideration for the deed of the mortgaged premises, the courts have held the grantee in the deed liable, on the ground that he, by his deed, acknowledged himself to hold so much money for the use of the mortgagee. And in those cases, it has been said, a suit at law could be maintained by the mortgagee against the grantee of the mortgagor. *Burr* v. *Beers*, 24 N. Y. 187; *Ross* v. *Kenneson*, 38 Mo. 396; *Comstock* v. *Hitt*, 37 N. Y. 456; *Thompson* v. *Thompson* 4 Ohio St. 333; *Sanford* v. *Hays*, 19 Com. 594. But in this case there is no admission that the assumption of the mortgage debt is a part of the consideration. The recital of the deed to Drury is to the effect that he assumes and agrees to pay this encumbrance. He does not admit nor declare that a part of the purchase money was to be paid by him (Drury) in payment of this mortgage indebtedness, as was the contract in many of the cases I have cited, so that this case is brought by its

facts more directly within the rule of the cases adjudicated in New Jersey and Massachusetts, which hold that the liability of the grantee of the mortgagor, who has assumed the mortgage debt, can be enforced in equity by an application of the principle of equitable subrogation. From these various considerations I have, therefore, no difficulty in reaching the conclusion that the court still has jurisdiction to pass upon the question of Drury's liability, and to render a personal decree against him if justified by the law and facts.

As to the second question, it appears from allegations in the bill which are not denied by the answer, and are admitted, that the complainant purchased the notes secured by this mortgage for a valuable consideration, before due, and after the deed from Daggett to Drury had been made; and, in November, 1876, when this transaction by the well-settled law of this state, where this transaction took place, and all the parties resided, the assumption of this indebtedness by Drury enured to the benefit of the mortgagee, and could be enforced by him either at law or in equity. The mortgagor in this case was the holder of these notes; that is, these notes were given to be negotiable, made payable to the order of the mortgagor, and the mortgage passed with the notes as an incident then free of the equities between the original parties.

The case of *Carpenter* v. *Logan*, 16 Wall. 27, sustains fully the doctrine which I have laid down here, that the parties to a mortgage cannot set up a mistake as against the purchaser of the notes and the holder of the mortgage debt. The same doctrine was affirmed in the case of the *New Orleans Canal & Barge Co.* v. *Montgomery*, 95 U. S. 16. The court must therefore presume that when the complainant purchased these notes she took them with knowledge of the fact that the defendant Drury had assumed and agreed to pay them, and that the obligation could be enforced by the holder of the notes. The defendant Drury had by this deed made himself, apparently, at least, a *quasi* party to the notes. He had agreed to assume and pay these notes, and thereby had given them, the court must presume, currency in the market. The mortgagee—that is, the *bona fide* holder of these notes—is, to

the extent of this mortgage, a purchaser of the mortgaged premises.    Jones on Mortgages, § 710, (1st Ed.)

In *Pierre* v. *Faunce*, 47 Me. 507, the court says: "A mortgage is *pro tanto* a purchase, and the *bona fide* mortgagee is equally entitled to protection as the *bona fide* grantee.    So the assignee of a mortgage without notice is on the same footing with a *bona fide* mortgagee in all cases.    The reliance of the purchaser is upon the record, and when that discloses an unimpeachable title he receives the protection of the law as against unknown and latent defects.    In this case the defendant Drury seeks to avoid the effect of the assumption of the debt on the ground of mistake, and the case seems to me to stand on precisely the same ground that it would occupy if he had filed a bill in equity to reform the deed, upon the ground that the assumption clause was inserted in it by mistake.    And the rule is well settled that such a mistake cannot be rectified to the prejudice of an innocent purchaser for value.    Story's Eq. Jur. § 165; *Luckman* v. *Wood*, 69 Ill. 329.    And if Drury could not be allowed to reform the deed by direct proceedings for that purpose, as against the *bona fide* holder of this mortgage and notes, who has purchased them on the faith of this assumption appearing on the record, it is equally clear that he cannot be allowed to set up that defence in this cause.    I therefore conclude that while, as between Drury and Daggett, this clause of assumption was wrongfully inserted, or at least improperly inserted in the deed, yet such mistake cannot be set up against the complainant, who has purchased these notes on the faith of Drury's apparent assumption of them, which then appeared of record; and I also hold that the release deed made by Daggett to Drury from this assumption must be deemed inoperative as against complainant, and the decree will be for the complainant against Drury for the amount of the mortgage debt.    The case shows that there has been a reference to the master, and a report made on it, some time in November last, of the amount due, as stated by the master, and I give a personal judgment for the amount, and interest from the date of the master's report.