# Pendrey *v.* Godwin, *et al.*

### *Ejectment.*

(Decided June 30, 1914. Rehearing denied July 25, 1914.
66 South. 43.)

1. *Deeds; Description; Property Conveyed.*—A deed conveying land known as the "Jesse Myers place, described as follows" followed by a description according to government subdivision, shows a purpose to convey the Jesse Myers place, and a misdescription in the government survey, will be disregarded.

2. *Same; Construction.*—A deed should be construed to carry out the intention of the parties as ascertained from the deed itself.

3. *Estoppel, by Deed; Operation and Effect.*—Where it is sought to fasten an estoppel upon a party to a deed by virtue of a clause therein contained, it is necessary to ascertain what was meant at the time by the deed, and when the intention can be determined, the instrument must be limited in its operations by way of estoppel to accord with the intention.

4. *Same.*—Ordinarily, a grantee in a deed is not estopped by the recitals therein, but where the recital showed that the object of the parties is to make the matter recited a fixed fact, the recital is binding on all the parties and their privies.

5. *Same; Construction.*—The deeds and the facts examined, and it is held that the description in the executor's deed was conclusive on the grantee as to the land conveyed, although the grantee did not read the deed, though having full capacity and opportunity to do so, but retained it without reading it.

6. *Evidence; Parol as to Writing.*—Where a deed contains everything necessary to a correct understanding of the intention of the parties, parol evidence is not admissible to control its construction or add to its provisions.

APPEAL from Crenshaw Circuit Court.

Heard before Hon. A. E. GAMBLE.

Ejectment by S. J. Pendry against Daniel Godwin and others. Judgment for defendant and plaintiffs appeal. Affirmed.

See also 175 Ala. 405, 57 South. 724.

M. W. RUSHTON, for appellant. It appears from the former opinion in this case that it was affirmed on the

ground that plaintiff was estopped from maintaining his action on account of having accepted a deed from the executors of the estate of Pendry, deceased. Under the facts in this case it seems that plaintiff was not informed of the matter of estoppel, and knew nothing about the facts set up as an estoppel. Certainty and mutuality are each essential elements of an estoppel.— *Sullivan v. L. & N.*, 128 Ala. 102, and cases there cited. To work an estoppel plaintiff must have done something upon which the other party acted or had a right to act to his harm, or to a change of his status.—Authorities supra; *Adler v. Penn,* 80 Ala. 354; *Donahue v. Johnson,* 120 Ala. 438; *Lienkauf v. Muenter,* 76 Ala. 194.

POWELL, HAMILTON & LANE, and F. B. BRICKEN, for appellee. There is nothing in this record to differentiate it from the case made on the former appeal, and it should be affirmed on the authority of *Pendry v. Godwin, et al.,* 175 Ala. 405.

DE GRAFFENRIED, J.—J. P. Pendry on May 10, 1905, executed and delivered to S. J. Pendrey, who was his nephew, a deed conveying, in fee simple, lands which are described in the deed as follows:

"The place known as the June Franklin place, described as follows: S. ½ of N. E. ¼ and E. ½ of N. W. ¼; and the place known as the Jess Myers place, described as follows: N. ½ of N. E. ¼; and the place known as the George Edwards place, described as follows: N. E. ¼ of S. E. ¼ and S. ½ of S. E. ¼—all in section 36, T. 7, R. 16, Crenshaw county, Alabama."

Immediately following the above description we find the following in the deed: "And it is understood that the purpose of this conveyance is to convey to S. J. Pendrey the George Edwards place, the June Franklin place

and the Jess Myers place, whether the above description is correct or not, and should the above description be erroneous, I hereby authorize my executors to convey the above places to said S. J. Pendrey by a proper description if the above description should be wrong."

It was the purpose of the grantor in the above deed to convey to the grantee the Jess Myers place, and he did, in fact, convey the legal title to the grantee to all of the lands embraced in the Jess Myers place. The fact that he described the place as the N. $\frac{1}{2}$ of N. E. $\frac{1}{4}$, section 36, township 7, range 16, Crenshaw county, Ala., did not *conclusively* establish the description of the lands by government numbers or the acreage.

"In the face of the expressed intention in the deed to convey the land 'known as the Jess Myers place,' the government numbers given, failing to correspond, will be regarded as a misdescription."—*Pendrey v. Godwin, et al.*, 175 Ala. 405, 57 South. 724.

2. The above deed must have been made by the grantor in the realization that his death was rapidly approaching. He, in said deed, authorized his executors, if he had made a mistake in describing the lands conveyed by the deed by government numbers, to correct, by a proper instrument, such description, and the evidence discloses that, shortly after the above deed was executed, the executors made to the grantee a deed for that purpose. In the deed from the executors they described the "Jess Myers" place just as it is described in the above-mentioned deed, viz., as containing the N. $\frac{1}{2}$ of N. E. $\frac{1}{4}$, section 39, township 7, range 16; no mention being made in said executors' deed of the S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$, section 25, township 7, range 16. The executors expressly state that *their* deed is made in "consideration of the request in deed of May 10, 1905, executed by the said James P. Pendrey to the said S. J. Pendrey and recorded in the of-

fice of the judge of probate in said county, Deed Book 25, page 80." The deed from the executors bears date November 16, 1905, and was recorded in the probate office of said county on said day, and while it corrects no errors in the description of the "Jess Myers place," as already stated, it does materially change the description, by government numbers, of the "George Edwards place." In other words, the deed from the executors did make some corrections in the description of the land which was conveyed by Pendrey to his nephew by said deed dated May 10, 1905, and can truthfully be said to have been accepted by the grantee for the purpose of rendering certain the description, by government numbers, of the lands actually conveyed and actually intended to be conveyed by said J. P. Pendrey to S. J. Pendrey by the deed dated May 10, 1905.

3. It appears that the S. W. ¼ of the S. E. ¼, section 25, township 7, range 16, *never at any time* belonged to Jess Myers. It appears, however, that many years ago Jess Myers "squatted" on the land, built a house on it, and lived on it. It further appears that he became by purchase the owner of the N. ½ of the N. E. ¼, section 36, township 7, range 16. It furthers appears that J. P. Pendrey bought the N. ½ of the N. E. ¼, section 36, township 7, range 16, from Jess Myers, and that he also acquired the S. W. ¼ of the S. E. ¼, section 25, township 7, range 16, not from or through Jess Myers, but *from* the party *to whom it belonged*. The evidence is in conflict as to whether the said S. W. ¼ of the S. E. ¼, section 25, township 7, range 16, was known as the "Jess Myers" place, and there was conflicting evidence as to whether the entire 120 acres embraced in the description "N. ½ of the N. E. ¼, section 36, and the S. W. ¼ of the S. E. ¼, section 25, T. 7, R. 16," was or was not known as the "Jess Myers place." All the evidence shows that

the N. ½ of the N. E. ¼, section 36, township 7, range
16, *was* known as the "Jess Myers place;" the dispute in
the evidence being as to whether the S. W. ¼ of the S. E.
¼, section 25, township 7, range 16, *was* or *was not* a
part of said "Jess Myers place."

4. "Clauses contained in deeds are to be construed so
as to carry out *the intention of the parties,* whenever
such intention can be ascertained. When it is sought to
fasten an estoppel upon a party to a conveyance, by vir-
true of some clause or statement in it, it is proper to as-
certain what was meant at the time by the language em-
ployed, and, when the intention can be determined by the
deed, the deed should be limited in its operation by way
of estoppel to accord with this intention."—3 Dev. on
Deeds (3d Ed.) § 1310.

It will be seen from the statement of facts, which we
have above given, that, up to the time when the executors
executed and delivered their deed to S. J. Pendrey, there
was room for dispute as to exactly what land J. P. Pen-
drey intended to convey to S. J. Pendrey. Undoubtedly
J. P. Pendrey conveyed by his deed to S. J. Pendrey the
legal title to all of the land which *he* and *S. J. Pendrey*
mutually understood to be covered by the general de-
scription *"Jess* Myers place," but, since the execution by
the executors of their deed and its acceptance by S. J.
Pendrey, there has been left no room for parol testimony
as to what lands, described by government numbers,
were intended to be conveyed under the description
"Jess Myers place."

"When the deed contains everything necessary for a
correct understanding of the intention of the parties,
and there is therefore no uncertainty or ambiguity, parol
evidence cannot control the construction or add to the
provisions of the deed."—Tiedeman on Real Property
(Enlarged Ed.) p. 824, § 827.

We have already said that the S. W. ¼ of the S. E. ¼ of section 25, township 7, range 16, *never* did belong to Jess Myers, although Jess Myers for a period "squatted" on it. The N. ½ of the N. E. ¼, section 36, township 7, range 16, *did* belong to Jess Myers. No one can doubt that the N. ½ of the N. E. ¼, section 36, township 7, range 16, was intended by J. P. Pendrey to be conveyed to S. J. Pendrey under the general description of the "Jess Myers place." The evidence in this case shows that, up to the time the executors made *their* conveyance to S. J. Pendrey, a jury, upon the disputed evidence in this case, *might* have found that said S. W. ¼ of S. E. ¼, section 25, was also, by J. S. Pendrey *intended* to be conveyed. Since the execution by the executors of their deed and its acceptance, there has been about this matter, as a matter of law, no further doubt. The parties themselves, by their own deed, have settled all doubt about the matter.

Ordinarily a grantee is not estopped by the recitals in his deed, but, when the recital shows that the object of the parties to the deed was to make "the matter recited a *fixed fact,*" then such recital binds all the parties to the deed, and as to them and their privies the matter recited becomes a "fixed fact."—*Hays v. Askew,* 50 N. C. 63.

In the instant case the deed from J. P. Pendrey to S. J. Pendrey and the deed from the executors of J. P. Pendrey to S. J. Pendrey must be read together. By his deed J. P. Pendrey clearly intended to convey and did in fact convey to S. J. Pendrey the June Franklin place, the Jess Myers place, and the George Edwards place, in Crenshaw county. By that deed J. P. Pendrey also showed clearly his intention, in so far as he was able to do so, to *correctly* describe the lands comprised in the three places by *government numbers.* To hedge against any error in said government numbers, the said J. P.

[Pendrey v. Godwin, et al.]

Pendrey, evidently then expecting an early death, provided that, if such government description so given "be erroneous, I hereby authorize my executors to convey the above places to said S. J. Pendrey by a proper description, etc." The only possible purpose of the conveyance from the executors of J. P. Pendrey to S. J. Pendrey was to *correct* any *error* which had been committed by J. P. Pendrey in his deed in the description by *government numbers.* In other words, the deed from the executors was executed for the sole purpose of *correctly* and *definitely fixing*—removing from the *realm of dispute*—the description, by *government numbers,* of the lands in Crenshaw county, known as the Edwards, Jess Myers, and June Franklin places. To hold otherwise would be to utterly disregard the language of the deed and the plain intent of the grantors when they executed the deed and of the grantee when he accepted the deed. If there is error in the description as given in the deed from the executors, it is not such an error as can be shown in a court of law.

5. The grantee, it is true, claims that he did not read the deed from the executors when it was delivered to him; that he trusted the grantors and did not discover, until long afterwards, that they had left out of the deed said S. W. ¼ of S. E. ¼, section 25, township 7, range 16. He still retains the deed, and it is a familiar principle that a party "having full capacity and opportunity to read a paper, and to whom there is no misrepresentation as to its contents, cannot set up his own want of attention—his failure to read it—as a fact to invalidate it."—*Goetter, Weil & Co. v. Pickett*, 61 Ala. 387.

The judgment of the court below is affirmed.

Affirmed.

Anderson, C. J., and McClellan and Sayre, JJ., concur.