(79 South. 611)

EPPES v. THOMPSON. (6 Div. 677.)

(Supreme Court of Alabama. April 4, 1918. On Rehearing, June 29, 1918.)

1. MORTGAGES ⬥═282(2)—TRANSFER OF MORTGAGED PROPERTY—ASSUMPTION OF LIABILITY.

Where a grantee accepts ·a deed with knowledge of a recital therein that he assumes an indebtedness against the property, he becomes personally and primarily liable for such debt, and such liability carries with it all the incidents of a mortgage security.

2. DEEDS ⬥═58(2) — DELIVERY—DELIVERY TO AGENT.

Delivery of a deed may be made to an agent without the personal presence of the grantee.

3. PRINCIPAL AND AGENT ⬥═103(10) — AUTHORITY—CONVEYANCE OF MORTGAGED PROPERTY—ASSUMPTION OF DEBT.

Where an agent has general authority to purchase, he may bind his principal by assuming a mortgage on the land purchased.

4. MORTGAGES ⬥═280(3) — CONVEYANCE OF MORTGAGED PREMISES—LIABILITY OF GRANTEE.

Where an agreement to assume a mortgage debt is incorporated in the deed of the property by mistake or fraud, without the grantee's knowledge, he is not bound thereby when he promptly disaffirms it upon discovery.

5. MORTGAGES ⬥═280(5) — CONVEYANCE OF MORTGAGED PREMISES—ACCEPTANCE.

That grantee under a deed, which recites that he assumed a mortgage indebtedness, has received rents from the property, is not conclusive of his acceptance or of his knowledge of the assumption clause.

6. ESTOPPEL ⬥═92(3)—ACCEPTANCE OF BENEFITS—CONVEYANCE OF MORTGAGED PREMISES—ASSUMPTION OF LIABILITY.

In a suit against a grantee to foreclose a mortgage, and for a deficiency decree, based upon a recital of assumption of liability in the deed, the grantee was not, because he accepted rents from the property, estopped to deny his knowledge of such clause, where it had been inserted in the deed by the grantor's fraud.

Anderson, C. J., dissenting in part, and McClellan, J., dissenting.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Suit by S. E. Thompson against T. D. Eppes to foreclose a mortgage, and for a deficiency decree. From a decree for complainant, respondent appeals. Reversed and remanded, and rehearing denied.

Riddle & Riddle, of Talladega, for appellant. N. L. Steele and Weakley & Rice, all of Birmingham, for appellee.

SAYRE, J. Appellee, S. E. Thompson, filed the bill in this cause to foreclose a mortgage and for a deficiency decree against appellant in the event a sale of the mortgaged prop-

erty should fail to produce the amount of appellee's debt. Appellee, for value and before maturity, had acquired a note and mortgage executed by one Ebersole, the note and mortgage in litigation, by assignment from one Roy C. Thompson, while appellant became involved in the personal liability asserted against him by accepting, as appellee averred in his bill, from the mortgagor Ebersole a deed containing a recital to the effect that the title conveyed was subject to outstanding mortgages for $3,750, which were assumed by the appellant as a part of the purchase price. One Letaw held a first mortgage for $3,000, but, incidentally, it appears that his mortgage had been foreclosed prior to the filing of the bill in this cause, though with what result in money does not appear. The mortgage assigned to appellee was a second mortgage for the sum of $750. Appellee's mortgage is not denied, and of course he was entitled to a decree of foreclosure. The controversy brought here for decision is about the deficiency decree which the circuit court, sitting in equity, gave against appellant.

After considering the evidence we infer that the trial court found appellee to be a bona fide purchaser of Ebersole's $750 note and its attendant security, and that a deficiency decree was passed against appellant on the theory that his defense was not available against the thus ascertained status of appellee's right. Conceding that appellee was a bona fide purchaser of Ebersole's note and mortgage, we shall briefly state our consideration of the case thus presented.

The defense was and is that there was no delivery of the deed to appellant and so that he never became a party to the recited assumption of the outstanding mortgage indebtedness, or that, if there was a manual delivery of the deed to appellant's agent and by a subsequent recordation of the deed—this being the delivery contended for—it was imposed upon his agent and upon himself by an artifice conceived and practiced with a purpose to conceal from him the fact that the deed contained the recital in question, and that appellant, upon discovering the fraud, promptly repudiated the alleged obligation and offered to restore rents he had received from the property in the meantime.

[1-3] It may be further conceded that, if appellant accepted the deed with knowledge of the recital in question, he thereby became personally and primarily liable for the debts according to the recital, and—this being said in view of appellee's claim of an attorney's fee—that such liability carried with it all the incidents of a mortgage security (People's Savings Bank v. Jordan, 76 South. 442[1]); that the delivery of a deed may be efficaciously made to an agent without the personal presence of the grantee; and where the agent has general authority to purchase, he may bind

[1] 200 Ala. 500.

his principal by assuming a mortgage on the land purchased (Cravens v. Rossiter, 116 Mo. 338, 22 S. W. 736, 38 Am. St. Rep. 607; Schley v. Fryer, 100 N. Y. 71, 2 N. E. 280), these propositions being advanced by appellee as conducing to an affirmance of the deficiency decree rendered in his favor by the court below.

[4] The grantee's obligation to the mortgagee in such case depends upon contract between him (the grantee) and his grantor, of which the recital in the accepted deed becomes evidence; but the authorities hold, upon what seems to be good reason, that where such an agreement is by mistake or fraud incorporated in the deed without the knowledge of the grantee, and is promptly disaffirmed by him upon discovery, he cannot be held to the undertaking by the mortgagee. Bogart v. Phillips, 112 Mich. 697, 71 N. W. 320; 27 Cyc. 1347. In Kilmer v. Smith, 77 N. Y. 226, 33 Am. Rep. 613, it is ruled that mutality of mistake is not necessary to the relief of the grantee in such cases, and that the ignorant party is entitled to relief, notwithstanding the other acted advisedly and upon full information, for that being admitted, there is fraud. To the same effect is Dey Ermand v. Chamberlain, 88 N. Y. 658. We quote from a high authority comment upon cases of the kind as follows:

"The truth is, in almost all cases of this character, there will be found sufficient, although it may be but slight evidence, that the party acted either upon want of consideration, which amounts to legal surprise, or upon the enticement or suggestion of some one in the interest of the other party, and this will constitute fraud." 1 Story, Eq. Jur. (12th Ed.) note to section 138c.

The case of Hayden v. Snow (C. C.) 14 Fed. 70, 9 Biss. 551, cited and stressed by appellee as holding to the contrary, and which we find cited in the latest edition of Jones on Mortages, was overturned upon this point by the Supreme Court of the United States. Drury v. Hayden, 111 U. S. 223, 4 Sup. Ct. 405, 28 L. Ed. 408.

As between the bona fide assignee of the mortgage creditor and the grantee of the mortgaged premises who has become ignorantly involved in an apparent assumption of the mortgage debt the case stands upon a different footing to some extent; still the liability in such case rests upon the contract relation between the parties to the conveyance of the mortgaged premises, and the grantee who has not in fact assumed such an obligation can be held liable only in the event some matter of estoppel has arisen in favor of the assignee. 2 Jones, Mtgs. (7th Ed.) § 738.

[5, 6] The deed from Ebersole to appellant was recorded and afterwards appellant for some months, and until he was informed of that clause of the deed which would make him responsible for the mortgage debts, was in receipt of rents from the property. This

it is conceded was sufficient to make out a prima facie case of acceptance by appellant, and so of his responsibility on the assumption clause. But these facts are not conclusive proof of acceptance or of appellant's knowledge of the assumption clause (Gulf Red Cedar Co. v. Crenshaw, 169 Ala. 606, 53 South. 812; Cravens v. Rossiter, supra), and the case for appellee comes in such unquestionable shape that we are constrained to credit the unequivocal depositions of appellant and the witness Henry, appellant's agent in the transaction, who deny that either of them was aware that the deed contained the assumption clause until demand was made upon appellant for the appellee's mortgage debt—there is no testimony to the contrary—and our further conclusion upon the whole evidence is that appellant should not be estopped to assert his ignorance of the clause by the inference of knowledge that would ordinarily be drawn from the record of the deed and the receipt of rents; this for the reason that he was led into his situation with respect to the deed by the enticement or suggestion of Roy C. and H. A. Thompson, real estate men in Birmingham, who engineered, the scheme by which appellant became involved, acting therein for themselves in fact, as real owners of the property, though apparently for Ebersole, in whom the legal title was, and one Tyler, who claimed to have purchased an equity in the property and proposed to convey the same to appellant the better to secure an old debt he owed the Farmers' & Merchants' Bank at Goodwater, of which bank appellant was cashier. We find from the evidence, which need not be stated in detail, that the Thompsons—not, however, appellee, who appears to have had no relations of kinship or business with Roy C. and H. A. except in the matter of this one transaction—together with Ebersole and Tyler, both of whom had business connections of a subordinate sort with the Thompsons, collaborated to entice appellant into an apparent acceptance of a deed containing the assumption clause in dispute and, taking advantage of circumstances peculiarly favorable to such a scheme, so artfully managed to procure such acceptance without the knowledge of appellant or his agent of the presence of the clause in the deed as to amount to a suppressio veri; that there was no delivery other than by the act of one or the other of the Thompsons, Roy C. or H. A., who filed the deed for record in the office of the probate judge, where, or in the possession of the Thompsons, it remained until appellee demanded of appellant payment of the mortgage debt, after which, and upon learning of the presence of the clause, appellant promptly repudiated the entire transaction and offered to pay over the rents he had collected to whomsoever they might belong, afterwards bringing them into court with his answer in this cause; in short, that neither appellant nor his agent did actually agree to assume the mortgage debts, and the circumstances of such delivery as there was and of appellant's receipt of rents were such that in equity appellant ought not to be denied the right to aver and prove the veritable facts which go to a denial of the contract and, in consequence, appellant's personal liability.

The decree will be reversed, and the cause will be remanded, with direction that a decree be entered in accordance with this opinion.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.

On Rehearing.

PER CURIAM. Application overruled.

ANDERSON, C. J., and MAYFIELD, SAYRE, SOMERVILLE, GARDNER, and THOMAS, JJ., concur. McCLELLAN, J., dissents.

ANDERSON, C. J. While I concur in the conclusion reached in this case, I do not fully indorse the opinion of the majority and prefer basing my opinion on the following propositions: There is no doubt of the fact that Thompson Bros. & Co., in conjunction with Ebersole and Tyler or through them perpetrated a fraud upon the respondent Eppes, by the insertion in the deed from Ebersole to him a clause whereby the said Eppes assumed payment of the pre-existing mortgages. Indeed, the books present but few, if any, cases disclosing what might be termed a more complete "frame-up" by a set of city sharps against an unsuspecting business man in a rural section, and counsel do not controvert the fact that Eppes is not liable, unless their client S. E. Thompson was an innocent purchaser of the mortgage from Ebersole to Roy C. Thompson. Eppes never saw the deed before it was recorded and never agreed to assume the existing mortgage. He told Tyler that Henry was going to Birmingham and would look at the property, etc., and if he thought well of it, he could send him (Eppes) the deed. The deed was not sent to Eppes, nor was it physically delivered to Henry according to his version, which should be accepted. He had no dealings with Ebersole, the grantor, but upon going into the office he remarked to Tyler that he could send the deed to Eppes, whereupon one of the Thompsons said the deed had been executed and suggested that it first be recorded before sending it to Eppes, to which Henry assented, though it seems not to have been sent to Eppes for months and not before the complainant claims to have purchased the mortgage. Henry never read the deed, but was led to believe by the parties, Tyler or Thompson, one or both, in the presence of each other, that the only recourse of the mortgagee would be to foreclose if the $2,-

000 mortgage was not paid at maturity, but that they would in the meantime collect the rent for Eppes. It is true, Henry may have assented to the recordation of the deed, but only to such a deed as Thompson and Tyler led him to believe had been executed, though it does not appear that Eppes authorized Henry to have the deed recorded. It is therefore quite doubtful as to whether or not Eppes was legally responsible for accepting the deed, or in permitting it to be recorded under the circumstances. It may be conceded, however, that Eppes was legally responsible, but which would not hold, as for the acceptance of the deed and for its reaching the record, then the question arises as to whether or not the complainant is such a bona fide purchaser of the mortgage as would entitle him to relief. The proof fails to connect this complaint with his namesake in the transaction with Eppes, and the record does not disclose any evidence charging him with actual notice of the fraud perpetrated upon Eppes, and I am willing to concede that if he purchased the mortgage in good faith upon the strength of the assumption clause and without notice of Eppes' defense he would be protected, provided, of course, Eppes accepted the deed or was responsible for the recording of same. While no actual notice is shown to this complainant of the infirmity of the deed or of the fraud practiced upon Eppes, there are several pertinent circumstances connected with this case which should have aroused the suspicion and put upon inquiry an ordinary prudent business man before purchasing the mortgage. The complaint says he saw the deed and abstract. In whose possession was the deed, and who exhibited it to him? Not Eppes or any agent of his, but the agent of Thompson, the mortgagee, who was trying to sell complainant the mortgage. Why was the mortgagee, Thompson, in possession of a deed from the third person to Eppes months after the execution and registration of same? Again, we find the agent of Roy Thompson making several visits to the complainant endeavoring to sell him this mortgage and the notes and finally selling them to him, aggregating $810 for $500, a discount of something over 50 per cent., for a period of less than nine months, said mortgage being secured upon property which the complainant regarded as being worth as much as all the mortgages upon same, including the one in hand and having also been assumed by a "wealthy banker." Why was Roy C. Thompson so anxious to sell this complainant notes secured by mortgage and which had also been assumed by a "wealthy banker" amounting to $810 and due within nine months at the greatly reduced price of $500, unless there was something wrong? The negotiations were pending for several days; the complainant could have easily reached Eppes by mail or telephone before closing the transaction at the extortious discount of over 50

per cent. on paper which he deemed well and adequately secured. It is true, the law does not prevent people from making profitable trades or charge a purchaser with notice of infirmity in a vendor's title from inadequacy of price alone, unless the price is so inadequate as to arouse the suspicion of an ordinary prudent man, and a discrepancy in price would no doubt have to be greater in the sale of ordinary chattels to produce such a result than in choses in action as to which there is little or no doubt as to the financial ability of the parties liable thereupon to meet the same when due. Hickey v. McDonald Bros., 160 Ala. 300, 48 South. 1031. I, of course, realize the rule that the purchaser of a note at a greater discount than the legal rate of interest, if the transaction is not tainted with usury, is not thereby prevented from being a bona fide purchaser, but stands in the shoes of an ordinary purchaser of goods and chattels, but this rule does not extend to the degree of protecting him under any and all circumstances, regardless of the surrounding circumstances and the grossly inadequate price paid for same. Moreover, this is not the purchase of a note executed by this defendant, but of one for little more than half its supposed value which it is contended the respondent assumed, and I think that the circumstances were such as put the complainant on inquiry as to whether or not Eppes had accepted the deed with knowledge of said assumption of the mortgages.

McCLELLAN, J. (dissenting). This court, in determining all causes, should be "governed by the principle of law, and not by the hardship of any particular case." Ellenborough, in Stephens v. Elwall, 4 M. & S. 259.

The application of the doctrine of the following authorities to the undisputed facts in this record demonstrates, it seems to me, the correctness of the decree of the court below in according S. E. Thompson, appellee, the protection due an innocent purchaser, for value, without notice. Hayden v. Drury (C. C.) 3 Fed. 782, 788, 789; Carpenter v. Longan, 16 Wall. 27, 21 L. Ed. 313; N. O. Canal Co. v. Montgomery, 95 U. S. 16, 24 L. Ed. 346; Pierce v. Faunce, 47 Me. 507; Rogers v. Adams, 60 Ala. 600; Ala. Nat. Bank v. Halsey, 109 Ala. 196, 19 South. 522. Neither the opinion nor the decision of the Supreme Court in Drury v. Hayden, 111 U. S. 223, 4 Sup. Ct. 405, 28 L. Ed. 408, reviewing the decision of the District Court in Hayden v. Drury (C. C.) 3 Fed. 782, 788, 789, cited above, reflected in the least upon the doctrine accepted by the lower court in that case. The reversal entered by the Supreme Court was rested upon a finding of fact only, not upon a different view of the law. 111 U. S. 227, 4 Sup. Ct. 405, 28 L. Ed. 408.

Again, if it is assumed for the occasion that Eppes, appellant, was equally innocent with S. E. Thompson, appellee, the decree

of the court below was fully justified by recourse to this rule:

"Wherever one of two innocent persons must suffer by the act of a third, he who enabled such third person to occasion the loss must sustain it." Reynolds v. Reynolds, 190 Ala. 468, 477, 67 South. 293; Noble v. Moses, 74 Ala. 604, 620; Allen v. Maury, 66 Ala. 10, 19; 16 Cyc. p. 773.

The evidence in the record affords plain ground upon which to apply this just principle.

The suggestion that S. E. Thompson may be concluded because he only paid $500 for a $750 second mortgage, further strengthened by Eppes' assumption of the mortgage debts in the conveyance to Eppes, is without any merit. The authorities are conclusive to these effects: That adequacy of consideration is not essential to constitute one a bona fide purchaser; that inadequacy of consideration may, upon occasion, prevent one from being a bona fide purchaser when it is so great as to shock the understanding. Burke v. Taylor, 94 Ala. 530–532, 10 South. 129; 39 Cyc. pp. 1700, 1701; Davidson v. Little, 22 Pa. 245, 60 Am. Dec. 81, 83, where it was said, Black, C. J., writing:

"Inadequacy of price is not fraud. A man may be as honest in making a profitable bargain as a bad one; and the law does not require him to pay a full price if the person he deals with is willing to take less. The owner of property may sell it for very little, or give it away for nothing, if he thinks fit; and however unreasonable his conduct may seem, his will alone is sufficient to avouch the act 'stat pro ratione voluntas.'"

Certainly, the difference indicated between the amount of the face of the second mortgage ($750 and some interest) and the amount paid by S. E. Thompson ($500) was not sufficient to even generate suspicion in the mind of a reasonable man much less justify a conclusion that he was a participant in a fraud, of which there is not the slightest evidence.

I would affirm the decree.