142 So. 41

**McKLEROY v. DISHMAN.**

**7 Div. 105.**

Supreme Court of Alabama.

May 12, 1932.

Rehearing Denied June 9, 1932.

Knox, Acker, Sterne & Liles and Hugh Walker, all of Anniston, for appellee.

Young & Longshore, of Anniston, for appellant.

BOULDIN, J.

The appeal is from a decree in equity reforming a deed to real estate.

In June, 1924, Tina Bell King and her husband, G. C. King, executed a mortgage upon

an improved lot in Anniston, to Susan N. McKleroy to secure an indebtedness of $1,-500.

In September of the same year the Kings executed a deed conveying the same property to Louis R. Dishman, reciting, as part consideration, the assumption by the grantee of the mortgage debt held by Mrs. McKleroy.

In March, 1930, Mrs. McKleroy foreclosed her mortgage under the power of sale, the property selling for less than the amount of the mortgage debt. Thereupon Mrs. McKleroy brought suit at law against L. R. Dishman to recover the unpaid balance.

Upon petition or motion of defendant alleging an equitable defense the cause was transferred to the equity docket, and the present bill filed by L. R. Dishman, as complainant, praying a reformation of the deed so as to disclose that the property was purchased and conveyed subject to the mortgage, and not upon an assumption of the mortgage debt, or such other appropriate relief as will protect complainant against personal liability for the mortgage debt.

The recital in the deed of the assumption of the mortgage indebtedness by the grantee is evidence of a promise to the grantors, the Kings, for the benefit of the mortgagee, who may maintain an action at law thereon; and, therefore, reformation in equity is the adequate and appropriate remedy. Eppes v. Thompson, 202 Ala. 145, 79 So. 611; Merritt v. Coffin, 152 Ala. 474, 44 So. 622.

By demurrer the bill is challenged for nonjoinder of the Kings as parties.

The bill avers they are nonresidents; that their residence is unknown, and complainant has been unable to ascertain the same.

By the transaction as written into the deed, the grantee, as between him and the grantors, became the principal debtor and the grantors sureties. If forced to pay the balance on the mortgage debt, the Kings would be subrogated to the rights and remedies of the mortgagee in law and in equity. Whittle v. Clark, 219 Ala. 161, 121 So. 530; Maulitz v. Jones, 222 Ala. 609, 133 So. 701; Waddell, Adm'r, v. Lanier, 62 Ala. 347; Smith's Executor v. Cockrell, 66 Ala. 64.

The reformation sought would change these contractual relations. The grantee would take only the equity of redemption, with the right, at his option, to protect his estate by a removal of the mortgage incumbrance. The grantors would remain the sole debtors to the mortgagee; but, if required to pay same, the estate of the mortgagee would revest in them. The grantee of the equity of redemption only could not take a complete unincumbered estate without paying the mortgage debt to whom it inured.

These several rights and equities grow out of contractual stipulations. The bill is directed to an annulment of the contract as written in the deed. If subject to the process of the court, the Kings should, without question, be made parties. King v. Coffee, 222 Ala. 245, 131 So. 792.

But the personal contractual rights and obligations of persons cannot be litigated upon constructive service against nonresidents. In such case, equity does not decline to grant proper relief among those subject to its jurisdiction. The rights of such nonresidents remain as before, to be litigated, if need be, at their instance. Culley v. Elford, 187 Ala. 165, 65 So. 381; Marr's Executrix v. Southwick, Cannon & Warren, 2 Port. 351; Holman v. Bank of Norfolk, 12 Ala. 369; Parkman's Adm'r v. Aicardi & Tool, 34 Ala. 393, 73 Am. Dec. 457; Teague v. Corbitt, Adm'r, 57 Ala. 529; 21 C. J. 272.

The averments relied upon as grounds for relief are as follows: "5. That although, as hereinbefore averred, the deed of the said Tina Bell King and her husband G. C. King to the defendant L. R. Dishman, contains an assumption by the defendant of the payment of the indebtedness secured by said mortgage, this defendant here positively denies that he, in person, ever made any trade with the said Tina Bell King or with the plaintiff, to assume the payment of said mortgage indebtedness; and he further avers most positively that he never, directly or indirectly, at any time, authorized any other person or persons to make any such trade for him, or in or upon his behalf; that he never has seen said deed and did not know that such a claim as is set out in the complaint in the suit brought against him existed until said suit was brought or until demand for the payment of the same was made upon him by the attorneys for the plaintiff Susan N. McKleroy just prior to the bringing of said suit. This complainant further avers that in so far as he was or is concerned said real estate was bought from the said Tina Bell King and her said husband G. C. King, subject to the said mortgage thereon, and that said alleged assumption of the payment of the said mortgage indebtedness was mistakenly or fraudulently included in said deed by whosoever prepared the same."

The bill does not aver, unless by implication, that the deed was prepared by or under the direction of the grantors. The demurrer does not question the bill on this ground. It appears by undisputed evidence that the grantors did cause the deed to be drafted, and that it was written strictly in pursuance to their instructions.

If, as averred, it was agreed between the grantors and the grantee that the purchase was subject to the mortgage, a mere purchase of the equity of redemption, with no

agreement to personally assume the mortgage debt, and the deed was accepted without knowledge that such clause was in the deed, this shows a mistake on the part of the grantee. As for the grantors, the insertion of such clause must needs have been due to a mistake or by design. If designedly, in the face of an agreement to the contrary, such act was a fraud. In either case, in the absence of laches or estoppel, there is a right of reformation. A mutual mistake, or mistake of one with fraud on the part of the other, warrants reformation in equity. Eppes v. Thompson, supra.

The circumstances leading to the making of the deed, as disclosed by the evidence, were these:

G. C. King was indebted to Anniston Lumber & Manufacturing Company, a corporation, in the sum of $650.

This company was engaged in the sawmilling business. Alonzo Dishman, and his two sons, Emmett Dishman and Louis Dishman, were the principal stockholders and in the management of the corporate business.

King had become financially embarrassed; the company was actively seeking to collect its demand; this led to the conveyance of the equity in this mortgaged property in satisfaction of such demand and a small cash payment. All three of the Dishmans were co-operating in the matter. Not wishing to take title in the corporate name, they, by common consent, caused the deed to be executed to Louis Dishman, as grantee, to be held for the use of his company. The deed, as appears, was actually delivered to Emmett Dishman, and was recorded the following day.

Appellee, in brief, stresses the fact that the deed was never seen by him, and that, if accepted by his company with full knowledge of the terms of the deed, the stipulation for assumption of the mortgage debt as a personal obligation on his part, without his knowledge and consent, was unauthorized and not binding.

■ We are not in accord with this view. Under the evidence all were acting with full authority for the company, which was supplying the consideration and acquiring a beneficial ownership and with like authority as agents for each other in effecting the common purpose. The stipulations of the deed, in the absence of mistake, were binding; and the right of Louis to protection against loss by the assumption clause is against his company, for whose benefit the transaction was had. Eppes v. Thompson, 202 Ala. 145, 146, 79 So. 611; Cravens v. Rossiter, 116 Mo. 338, 22 S. W. 736, 38 Am. St. Rep. 607; Schley v. Fryer, 100 N. Y. 71, 2 N. E. 280.

Dealing, therefore, with the case in this light, one inquiry is: Was there a mistake in writing into the deed the assumption of the mortgage debt by the grantee, instead of conveyance of an estate subject to the mortgage?

If the deed was accepted with knowledge of its contents in this regard, this would foreclose further inquiry; prior negotiations would be merged in the written contract entered into and knowingly accepted as the final memorial of the transaction. On this point each of the Dishmans, examined orally before the trial judge, testified to the fact that no assumption of the mortgage debt was agreed to; that they were taking over the equity of redemption for what it was worth in collection of a bad debt; that it was expressly understood their deed was to be subject to the mortgage; that when the deed was accepted it was not read; and, in fact, that the clause in question was never discovered by either of them until demand was made to pay the debt shortly before the suit was filed.

The question is then raised that, if the deed was accepted without reading, this was such negligence or want of diligence as to defeat reformation. In many cases, failure to read a document by one who is able to do so cannot set up his own want of attention, no fraud appearing to invalidate it. This is especially true when one is himself executing the paper. Pendrey v. Godwin, 188 Ala. 565, 66 So. 43; Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 94 So. 606; Greil v. Tillis, 170 Ala. 391, 54 So. 524.

But much depends on the circumstances of the particular case.

Mistakes in writings, the insertion or omission of provisions not in accord with the actual agreement of the parties, could scarcely occur without inattention, want of a high degree of diligence.

In reformation cases a want of vigilance is usually chargeable to both parties. Equity does not look with favor on taking advantage of a mistake by one of the parties equally at fault, which results in imposing on the other a burden not contemplated by either at the time.

■ If the mistake on the part of the grantee was induced by the negligence of the grantor in drafting the instrument, equity will not deny reformation. Accordingly, failure to read the instrument is now held by the great weight of authority not such negligence per se as to defeat reformation. Gralapp v. Hill, 205 Ala. 569, 88 So. 665; Cudd v. Wood, 205 Ala. 682, 684, 89 So. 52; Parra v. Cooper, 213 Ala. 340, 104 So. 827; 21 C. J. p. 976, n. 1; 5 Pom. Eq. Jur. (2d Ed.) § 2101 (680); Martin v. Hempstead County Levee District Number 1, 98 Ark. 23, 135 S. W. 453; Crosby v. Andrews, 61 Fla. 554, 55 So. 57, Ann. Cas. 1913A, 420.

136

■ More clearly and obviously, the grantor cannot set up the negligence of the grantee in failing to read the instrument, if the fraud or inequitable conduct of the grantor caused the instrument to be drawn or accepted with provisions at variance with the true agreement. One cannot complain of misplaced confidence in himself. If, on the whole, denial of relief will work a fraud on the grantee, a court of equity will not sustain such defense. 53 C. J. p. 975, notes 98 and 99.

■ We note, as of course, that no inequitable conduct is chargeable to Mrs. McKleroy. She was not a participant at all in the making of the deed. Her rights are derivative only. The promise for her benefit was supported by the consideration passing between the parties to the deed; she was out nothing; entered into no contract on the faith of the provisions of the deed. Her equities in the matter of reformation are precisely the same as those of King, unless by subsequent act of complainant she has been prejudiced.

■ Appellant relies upon laches as a defense. It appears complainant, or his company, took possession in 1924, and was in perception of the rents to time of foreclosure in 1930. Meantime the interest on the loan, taxes, etc., were paid, all aggregating more than the rents received. Demand was made for payment of interest from time to time, but this was quite proper because payment of interest was necessary for complainant to protect his equity of redemption against foreclosure, and King had departed for parts unknown shortly after the transaction. Complaint is made that Mrs. McKleroy might have foreclosed to better advantage at an earlier date, if she had been informed complainant repudiated the personal obligation. No evidence goes to the effect that she suffered her mortgage security to depreciate on the faith of complainant's personal obligation. It is admitted that at no time was complainant advised by her or her agent that she was looking to his individual responsibility.

■ Complainant's evidence supports the averment of the bill that he had no knowledge of the assumption clause in the deed until shortly before suit was brought. Several circumstances tend to support his version.

■ We may say, however, that, if the deal had been consummated and deed accepted before discovery of the mistake, mere delay in filing a bill for reformation even after discovery would not be laches unless respondent was prejudiced thereby. In such case, the party need not file his bill to reform until there is an assertion of rights adverse to the true agreement, an occasion to go into equity for his protection. Zeigler v. Zeigler, 180 Ala. 246, 60 So. 810.

One exception relating to stale demand is recognized where there is acquiescence and inaction for such great lapse of time that, by death or removal of parties, and loss of evidence, it is no longer practical to get at the truth of the matter; such inaction is termed laches, rendering the demand stale in equity, sometimes short of the prescription period of twenty years. None of these conditions obtain here.

■ Reformation of solemn written instruments is not to be granted except upon clear, convincing, and satisfactory evidence. This conservative rule tending to preserve the sanctity of the permanent memorials of transactions should be steadfastly applied by the trier of facts.

In the instant case, complainant's case is fully supported by his testimony and that of his witnesses, seen and heard by the trial judge. No direct evidence, nor material circumstances, tend to discredit their testimony.

We cannot declare the court in error in his finding.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.