**In re Robert John HUNTER, Debtor.**

**Robert John HUNTER, Plaintiff,**

**v.**

**Lonnie MIXON, Trustee, Alabama Power Company; Air Products and Chemicals, Inc.; Georgia Gulf Corporation; and Theresa J. Hunter, aka T.J. Hunter, Defendants.**

**Bankruptcy No. 87–00865.
Adv. No. 88–0044.**

United States Bankruptcy Court,
S.D. Alabama.

June 16, 1989.

Charles H. Sims, III, Selma, Ala., for defendants.

## ORDER

GORDON B. KAHN, Chief Judge.

This matter having come on for hearing upon the complaint of the debtor for determination of the validity, priority and extent of certain liens on real property; due notice of said hearing having been given; and Charles H. Sims having appeared for Theresa J. Hunter; and A. Richard Maples, Jr. having appeared for the debtor; and arguments and evidence having been presented; and the matter having been taken under submission; now, therefore, the Court finds, concludes, and orders as follows:

## FINDINGS OF FACT

1. On May 29, 1987, the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code.

2. At the time of the filing of his bankruptcy petition, the debtor owned the following interests in real property:

PARCEL A:

(Homestead) undivided one-half interest in and to house and eight (8) acres on River Road, Selma, Alabama, more particularly described as follows:

(1):

Commence at a stone corner at the ¼ Section corner on the west side of Section 18, T 17 N, R 12 E, Dallas County, Alabama; thence run East along the ¼ Section Line for 1562.4 feet to a point on the West line of the Bertha Lee Reynolds tract; thence run North 28 degrees 45 minutes East along the west line of said Reynolds tract for 872.7 feet to an iron pipe; thence run South 70 degrees 15 minutes East along the north line of said tract for 227 feet to an iron pipe corner at the northeast corner thereof, said iron pipe being the point of beginning of the Robert J. Hunter tract herein described. Thence from said point of beginning run South 79 degrees 15 minutes East for 475 feet to an iron pipe corner; thence run South 43 degrees 15 minutes East for 145 feet to an iron pipe corner; thence run South 21 degrees 15 minutes West for 569.5 feet to an iron pipe corner on the south line of the NE ¼ of Section 18; thence run West along the ¼ Section line for 541 feet to an iron pipe corner on the east line of the Bertha Lee Reynolds tract; thence run North 27 degrees 30 minutes East along the east line thereof for 374.5 feet to an iron pipe corner; thence run North zero degrees 15 minutes West along the east line of said Reynolds tract for 400 feet to the point of beginning. The above described tract containing 7.97 acres, more or less, lying and being in the NE ¼ of Section 18, T 17 N, R 12 E, Dallas County, Alabama.

(2):

Begin at the southwest corner of the Robert J. Hunter 7.97 acre Tract as shown by map recorded in Deed Book 835, Page 110 in the Probate Office of Dallas County, Alabama and run south 27 degrees 30 minutes West along the east line of Lot 1, William Henry King Subdivision, Plat 1 as shown by map recorded in Map Book 5, Page 361 in the Probate Office of Dallas County, Alabama, for 167.5 feet to an iron corner on the north right of way of Dallas County Road No. 80; thence run south 64 degrees 15 minutes east along the right of way of said Road for 30.01 feet to an iron corner; thence run North 27 degrees 30 minutes East for 182.2 feet to an iron corner on the south line of the Robert J. Hunter 7.97 Ac. Tract; thence run west along the south line of said Hunter Tract for 33.82 feet to the point of beginning. The above described parcel containing 0.12 acres, more or less, lying and being in the W ½ of NW ¼ of SE ¼, Section 18, T 17 N, R 12 E, Dallas County, Alabama.

PARCEL B:

Undivided one-third interest in and to approximately two hundred ninety (290) acres of farmland in Selma, Alabama, more particularly described as follows: The north half of Section 18, T 17 N, R 12 E, less and except therefrom the following described lands, to-wit:

Seven acres in the southwest corner of the SW ¼ of NW ¼ of Section 18, T 17 N, R 12 E, Dallas County, Alabama, deeded to L.C. Alsobrook, by survey of Dan C. Royal, dated May 22, 1964.

Lot 7, containing 1.70 acres, Lot 6, containing 5.64 acres, that part of Lot No. 1, lying north of the south line of the N ½ of said Section 18, containing 7.36 acres, all as shown by Map of William Henry King Subdivision–Plat 1, recorded in the Probate Office of Dallas County, Alabama, in Map Book 5 on Page 361; said lots containing in aggregate 14.70 acres.

0.30 acre lying east of the west line of the NW ¼ of NW ¼ of Section 18, T 17 N, R 12 E, and west of the old possession line fence as shown by Plat of survey of lands deeded to W.E. Hughes and wife, by deed recorded in the Probate Office of Dallas County, Alabama, in Deed Book 491, on Page 434; said exception containing 0.70 acre.

0.5 acre in right of way of Alabama Highway No. 14 (Selma to Burnsville Highway) said parcel being in the north-

west corner of the NW ¼ of NW ¼ of Section 18, T 17 N, R 12 E, as shown by Map in deed of lands of W.E. Hughes, recorded in the Probate Office of Dallas County, Alabama, in Deed Book 491, on Page 434.

Right of way of Dallas County Road No. 37, SACP–3205–A, running along the south side of the N ½ of said Section 18, T 17 N, R 12 E, containing 2.39 acres, more or less.

The above five exceptions containing in aggregate 24.44 acres, more or less.

The lands herein described containing 299.82 acres, more or less.

3. The debtor and Theresa J. Hunter were divorced April 3, 1980. The divorce decree provided, in pertinent part, as follows:

"11. Second Party (debtor) does hereby agree to pay to First Party (Theresa J. Hunter) as periodic alimony the following sums of money over the following period of time, viz: The sum of TWO HUNDRED AND NO/100ths DOLLARS ($200.00) per month beginning April 1, 1980, for a period of thirty-six (36) months, at which time said periodic alimony shall be increased to the sum of TWO HUNDRED FIFTY AND NO/100ths ($250.00) per month for an additional thirty-six (36) and at the expiration of the said second thirty-six months, Second Party shall pay to First Party as periodic alimony the sum of THREE HUNDRED AND NO/100ths DOLLARS ($300.00) per month for forty-nine (49) months. It being the intention of the parties hereto that First Party shall receive from Second Party the total sum of THIRTY THOUSAND NINE HUNDRED AND NO/100ths DOLLARS ($30,900.00) as periodic alimony over the period of time set forth above."

Payments were secured by a third mortgage on 80 acres of Parcel B, more fully described as follows:

NW ¼ of NE ¼ and N/E ¼ of NE ¼ in Sec. 18, T 17 N, R 12 E, Dallas County, Alabama.

4. The mortgage securing the payments to Theresa Hunter is inferior to the following mortgages:

Mortgage to Sandyland of Alabama, Inc. dated October 31, 1978.

Mortgage to SouthTrust Bank dated April 4, 1980.

5. Paragraph 11 of the divorce decree was modified on June 7, 1984, as follows:

"That the periodic alimony payments due under the Divorce Decree for the months of May 1983 through December 1984 are hereby suspended until January 1, 1985. On January 1, 1985 the Defendant shall begin paying to Plaintiff as periodic alimony the sum of $250.00 per month for a period of thirty-five (35) months and at the expiration of said thirty-five (35) months, Defendant shall pay to Plaintiff as periodic alimony the sum of $300.00 for forty-nine (49) months."

6. Although Theresa Hunter has not remarried, she has been living with another man for several years. Despite his ex-wife's living arrangements, the debtor continued to make monthly payments according to the divorce decree. The debtor testified that on the advice of counsel he did not seek to modify or terminate the monthly payments because they represented a property settlement.

7. On December 4, 1981, the debtor and his current wife, Susan Dennard Summers Tackett Hunter, conveyed Parcel B to Robert J. Hunter, Susan Hunter, and Norman A. Rund. Although the deed purports to convey an undivided one-third (⅓) interest in the property to each party, it is uncontradicted that Norman A. Rund was to receive an undivided one-half (½) interest in the property with the debtor and Susan Hunter each receiving an undivided one-quarter (¼) interest.

8. The December 4, 1981, conveyance of Parcel B was made subject to the first mortgage to Sandyland of Alabama, Inc. and the mortgage to Theresa J. Hunter.

9. Parcels A(1), A(2) and B are subject to the following liens and encumbrances:

*Parcel B:* Mortgage to Sandyland dated October 31, 1978, recorded November 9,

1978. Mortgage payoff as of May 29, 1987: $137,742.34.

*Parcels A(1) and B:* Mortgage to South-Trust Bank dated April 4, 1980, recorded April 4, 1980. Mortgage payoff as of May 29, 1987: $31,789.75.

*Portion of Parcel B (80 acres):* Mortgage to Theresa Hunter dated April 4, 1980, recorded May 12, 1980. No evidence was presented to show the balance due Theresa J. Hunter.

*Parcels A(1) and A(2):* Mortgage to Altus Bank dated January 15, 1986, recorded January 21, 1986. Mortgage payoff as of May 29, 1987: $95,775.02.

*Parcels A(1), A(2), and B:* Judgment in favor of Alabama Power Company and against the debtor in the amount of $21,896.47, recorded October 15, 1986.

10. Parcels A(1) and A(2) have a total fair market value of $132,000. Parcel B has a fair market value of $102,000.00.

## CONCLUSIONS OF LAW

The debtor has filed the instant complaint seeking to determine the validity, priority and extent of certain liens on his real property. The debtor's primary motivation in filing this action, however, is to void the liens of Theresa Hunter and the Alabama Power Company.

Section 506(a) of the Bankruptcy Code bifurcates an undersecured creditor's claim into secured and unsecured portions. Thus, a creditor has "a secured claim to the extent of the value of his collateral; and he has an unsecured claim for the balance of his claim." S.Rep. No. 95–989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5854. *See In re Kruger,* 77 B.R. 785 (Bkrtcy.C.D.Cal.1987). Although she has a mortgage on 80 acres of Parcel B, Theresa Hunter has an unsecured claim in this case because her lien is junior to liens exceeding the value of the property. 11 U.S.C. § 506(a); *See Matter of Folendore,* 862 F.2d 1537 (11th Cir. 1989). Alabama Power Company also does not have an allowed secured claim in the debtor's case for similar reasons. Because Theresa Hunter and the Power Company do not have allowed secured claims, the debtor seeks to void their liens pursuant to 11 U.S.C. § 506(d).

Section 506(d) provides that

"(d) to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 503(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of claim under section 501 of this title."

In *Folendore, supra,* the Eleventh Circuit Court of Appeals adopted the majority view that a debtor may use section 506(d) to void a lien even though the bankruptcy court has not disallowed the claim. Construing the 1978 version of section 506(d), the court found it prudent to consider the current version of 506(d) and noted that:

"... the 1984 amendments to the Bankruptcy Code ... make it clear that all liens based on unsecured claims are void with two exceptions.... After 1984, the debtor need not even make a request under section 502. All unsecured liens are void under section 506 unless (1) the underlying claim was disallowed under section 502(b)(5) or section 502(c), or (2) the underlying claim is not an allowed claim because the lienholder failed to file a proof of claim."

*Folendore, supra,* at 1539. Neither exception is applicable in the instant case. Accordingly, the debtor may use section 506(d) to void the unsecured liens of Theresa Hunter and the Power Company on his property.

Alabama Power Company's lien attached to the debtor's fractional interests in Parcels A and B; however, Theresa Hunter's mortgage attached to 80 acres of Parcel B prior to the conveyance of Parcel B to the debtor, Susan Hunter, and Norman Rund. The ultimate question is "Does a lien on a non-debtor's interest in property conveyed subject to a lien created by the debtor survive the application of section 506(d) where the debtor conveyed the prop-

erty prior to filing his bankruptcy petition?" For the following reasons, the Court concludes that section 506(d) cannot be used to void a lien on property that does not belong to the debtor.

Section 506(d) allows a debtor to void a lien to the extent that it secures a claim that "is not an allowed secured claim." In determining whether a claim is secured or unsecured for bankruptcy purposes, the Court looks to the value of the creditor's interest "in the estate's interest in such property." 11 U.S.C. § 506(a). Therefore, the lien that may be avoided under section 506(d) must be a lien on property in which the estate has an interest. 11 U.S.C. § 506(a). Furthermore, the commencement of a case under the Bankruptcy Code creates a bankruptcy estate comprised, in part, of "all legal or equitable interests of the *debtor* in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). The debtor's undivided ¼ interest in parcel B is part of the bankruptcy estate; the interests of Susan Hunter and Norman Rund are not. Accordingly, the debtor may only void Theresa Hunter's lien on his fractional interest in the 80 acres of parcel B. Theresa Hunter's lien remains valid as to Susan Hunter and Norman Rund's fractional interests in the 80 acres of Parcel B.

■ Theresa Hunter argues, however, that Susan Hunter and Norman Rund became co-debtors or guarantors on her mortgage since they received their interests in Parcel B "subject to" her mortgage. In *Trauner v. Lowrey*, 369 So.2d 531 (Ala. 1979), the Supreme Court of Alabama addressed a grantee's interest in property when property is conveyed subject to a mortgage. The Court noted that

"In *McKleroy v. Dishman*, 225 Ala. 131, 134, 142 So. 41, 43 (1932), with regard to a mortgagor's grantee taking subject to the mortgage, this Court stated:

The grantee would take only the equity of redemption, with the right, at his option, to protect his estate by a removal of the mortgage incumbrance. The grantors would remain the sole debtors to the mortgagee; but, if required to pay same, the estate of the mortgagee would revest in them. The grantee of the equity of redemption only could not take a complete unincumbered estate without paying the mortgage debt to whom it inured.

.     .     .     .     .

... Clearly, the conveyance from Maddox to Eastland was made subject to the Hackmeyer mortgage. As a result of this conveyance Eastland received an equity of redemption which was all that Maddox had to convey. As grantee, Eastland *incurred no personal obligation* to pay the mortgage, but he had the privilege to do so to protect his interest in the property."

*Lowery, supra,* at 534 (emphasis added). The Court also recognized that

"In a conveyance made subject to a mortgage, 'the mortgagor has no obligation to the transferee to pay [the mortgage debt] for the purpose of relieving the land in the hands of the transferee.' 4 American Law of Property § 16.127 (A.J. Casner ed. 1952). Therefore, Maddox owed Eastland no duty to pay the mortgage debt. As language in *McKleroy, supra,* suggests, one who takes subject to a mortgage must pay the debt himself in order to take an unencumbered title."

*Lowery, supra,* at 535. Although Susan Hunter and Norman Rund received their interests in the property subject to Theresa Hunter's mortgage, they are not guarantors or co-debtors on the mortgage. However, in order to take unencumbered title to their fractional interests in the 80 acres of Parcel B, Susan Hunter and Norman Rund must satisfy Theresa Hunter's lien on their interests in the property. *Lowery, supra.*

■ The parties have also addressed whether the debt owed Theresa Hunter is dischargeable in the debtor's bankruptcy case. Section 523(a)(5) of the Bankruptcy Code excepts from discharge any debt for alimony, maintenance or support. *See In re Harrell,* 754 F.2d 902 (11th Cir.1985). The Court must look to the substance of the divorce agreement and not the label placed on the obligation in determining whether an obligation is in the nature of

support. *In re Midnet,* 84 B.R. 776 (Bkrtcy.M.D.Fla.1988). Although the divorce decree provided that Theresa Hunter was to receive "periodic alimony" payments totaling $30,900.00, a subsequent modification of that decree did not alter the total amount due Theresa Hunter. The Court finds the award not to be "periodic alimony" but to be a property settlement. *See In re Delaine,* 56 B.R. 460 (Bkrtcy.N.D.Ala.1985). The debt owed Theresa Hunter is therefore dischargeable in the debtor's bankruptcy case. Now, therefore, it is

### ORDER

ORDERED that the lien of Theresa Hunter on the debtor's undivided ¼ interest in the following described property be, and it hereby is, declared VOID:

NW ¼ of NE ¼ and N/E ¼ of NE ¼ in Sec. 18, T 17 N, R 12 E, Dallas County, Alabama.

and it is further

ORDERED that the lien of Alabama Power Company on the debtor's undivided ¼ interest in the following described property be, and it hereby is, declared VOID;

PARCEL A:

(Homestead) undivided one-half interest in and to house and eight (8) acres on River Road, Selma, Alabama, more particularly described as follows:

(1):

Commence at a stone corner at the ¼ Section corner on the west side of Section 18, T 17 N, R 12 E, Dallas County, Alabama; thence run East along the ¼ Section Line for 1562.4 feet to a point on the West line of the Bertha Lee Reynolds tract; thence run North 28 degrees 45 minutes East along the west line of said Reynolds tract for 872.7 feet to an iron pipe; thence run South 70 degrees 15 minutes East along the north line of said tract for 227 feet to an iron pipe corner at the northeast corner thereof, said iron pipe being the point of beginning of the Robert J. Hunter tract herein described. Thence from said point of beginning run South 79 degrees 15 minutes East for 475 feet to an iron pipe corner; thence run South 43 degrees 15 minutes East for 145 feet to an iron pipe corner; thence run South 21 degrees 15 minutes West for 569.5 feet to an iron pipe corner on the south line of the NE ¼ of Section 18; thence run West along the ¼ Section line for 541 feet to an iron pipe corner on the east line of the Bertha Lee Reynolds tract; thence run North 27 degrees 30 minutes East along the east line thereof for 374.5 feet to an iron pipe corner; thence run North zero degrees 15 minutes West along the east line of said Reynolds tract for 400 feet to the point of beginning. The above described tract containing 7.97 acres, more or less, lying and being in the NE ¼ of Section 18, T 17 N, R 12 E, Dallas County, Alabama.

(2):

Begin at the southwest corner of the Robert J. Hunter 7.97 acre Tract as shown by map recorded in Deed Book 835, Page 110 in the Probate Office of Dallas County, Alabama and run south 27 degrees 30 minutes West along the east line of Lot 1, William Henry King Subdivision, Plat 1 as shown by map recorded in Map Book 5, Page 361 in the Probate Office of Dallas County, Alabama, for 167.5 feet to an iron corner on the north right of way of Dallas County Road No. 80; thence run south 64 degrees 15 minutes east along the right of way of said Road for 30.01 feet to an iron corner; thence run North 27 degrees 30 minutes East for 182.2 feet to an iron corner on the south line of the Robert J. Hunter 7.97 Ac. Tract; thence run west along the south line of said Hunter Tract for 33.82 feet to the point of beginning. The above described parcel containing 0.12 acres, more or less, lying and being in the W ½ of NW ¼ of SE ¼, Section 18, T 17 N, R 12 E, Dallas County, Alabama.

PARCEL B:

Undivided one-third interest in and to approximately two hundred ninety (290) acres of farmland in Selma, Alabama, more particularly described as follows: The north half of Section 18, T 17 N, R 12 E, less and except therefrom the following described lands, to-wit:

Seven acres in the southwest corner of the SW ¼ of NW ¼ of Section 18, T 17 N, R 12 E, Dallas County, Alabama, deeded to L.C. Alsobrook, by survey of Dan C. Royal, dated May 22, 1964.

Lot 7, containing 1.70 acres, Lot 6, containing 5.64 acres, that part of Lot No. 1, lying north of the south line of the N ½ of said Section 18, containing 7.36 acres, all as shown by Map of William Henry King Subdivision–Plat 1, recorded in the Probate Office of Dallas County, Alabama, in Map Book 5 on Page 361; said lots containing in aggregate 14.70 acres.

0.30 acre lying east of the west line of the NW ¼ of NW ¼ of Section 18, T 17 N, R 12 E, and west of the old possession line fence as shown by Plat of survey of lands deeded to W.E. Hughes and wife, by deed recorded in the Probate Office of Dallas County, Alabama, in Deed Book 491, on Page 434; said exception containing 0.70 acre.

0.5 acre in right of way of Alabama Highway No. 14 (Selma to Burnsville Highway) said parcel being in the northwest corner of the NW ¼ of NW ¼ of Section 18, T 17 N, R 12 E, as shown by Map in deed of lands of W.E. Hughes, recorded in the Probate Office of Dallas County, Alabama, in Deed Book 491, on Page 434.

Right of way of Dallas County Road No. 37, SACP–3205–A, running along the south side of the N ½ of said Section 18, T 17 N, R 12 E, containing 2.39 acres, more or less.

The above five exceptions containing in aggregate 24.44 acres, more or less.

The lands herein described containing 299.82 acres, more or less.

and it is further

ORDERED that the debt owed Theresa J. Hunter, be and it hereby is, declared DISCHARGEABLE in the debtor's bankruptcy case; and it is further

ORDERED that no part of this order is intended or shall be construed as affecting any liens of any creditor on any property interest other than an interest owned by the debtor.